Niezorawski, Plaintiff in error, vs. The State, Defendant in error.

*February 23—March 19, 1907.*

(1) *Construction of statutes: Use of formal rules.* (2–10) *Criminal law and practice: Grand juries: List of jurors where deposited: Use in other courts: Oath of stenographer where filed: Immaterial errors and irregularities: Examination of jurors: Instructions to jury: Evidence as to reputation: Reasonable doubt: Corroboration of witnesses: Compromise verdict.*

1. In the construction of a statute it should be considered first from the viewpoint of good faith, common sense, and impartiality, and formal rules of interpretation should be invoked only when doubts otherwise unsolvable arise.

2. Under sec. 2546a, Stats. (Supp. 1906; Laws of 1903, ch. 90), requiring the record book in which the grand jury list is entered to be deposited with "the clerk of the court of such county, who shall securely keep the same so that the" list shall not become known, such book is to be deposited with the clerk of the circuit court.

3. When a grand jury is to be drawn in a municipal court or other inferior court, the grand jury list, after being deposited with the clerk of the circuit court, is to be removed (in proper custody) to the office of the clerk of such inferior court, and is to be returned after the drawing.

4. The fact that a book so removed remained in the office of the clerk of the inferior court for some months and until after a

second grand jury was drawn from the list, was an irregularity, but in this case not prejudicial.

5. The oath which the stenographer employed by a grand jury is required by sec. 2546f, Stats. (Supp. 1906; Laws of 1903, ch. 90), to "make and file," should probably be filed with the clerk of the grand jury, but an error in this respect would not make the stenographer a disqualified person or an interloper among the grand jurors, or be prejudicial.

6. Under secs. 4659, 4706, Stats. (1898), no exceptions are available in a criminal case except such as relate to rulings which the appellate court can see, from the record returned, actually prejudiced the defendant in his defense upon the merits.

7. A juror who testified that upon the question of the guilt or innocence of the defendant he had no preconceived opinion, no bias or prejudice, and that he understood and thought he could apply the presumption of innocence in defendant's favor, is *held* competent and qualified, although he also said he thought that, as between defendant and one against whom no indictment was found or legal charge made, there was a greater possibility or more likelihood of the defendant being guilty than there was of such other person being guilty. Metaphysical inquiries as to the matter last mentioned were not within the proper scope of the examination into the juror's qualifications.

8. A requested instruction to the effect that the testimony as to the good reputation of defendant as to his honesty and integrity might, if believed, be in itself sufficient to raise a reasonable doubt as to his guilt, is *held* to have been properly denied; and the charge given, to the effect that such testimony should be considered in connection with all the other evidence and that the jury should convict or acquit according as they should or should not, from all the evidence, be satisfied of defendant's guilt beyond a reasonable doubt, is approved.

9. A requested instruction, with reference to testimony as to the bad reputation of a witness for truth and veracity, as follows: "If from such testimony you are satisfied that the said witness has been impeached, or you have a reasonable doubt on account of such testimony as to his credibility, you should disregard his testimony given in this case, except as to those parts, if any, in which such testimony has been corroborated by other credible witnesses," was properly denied because it directed, not merely permitted, the jury to disregard his testimony, because it limited the corroboration to testimony of witnesses, thereby excluding circumstances and documents, and because it required corroboration by more than one witness.

10. The facts that a verdict of guilty was accompanied by a recommendation of mercy, and that before separating the jury handed to the judge a written request for leniency toward the defendant, do not show that the verdict was a compromise verdict which must be set aside.

ERROR to review a judgment of the municipal court of Milwaukee county: A. J. VINJE, judge of the Eleventh circuit, sitting for the municipal judge. *Affirmed.*

The plaintiff in error (hereinafter called the defendant) was convicted of the crime of bribery. A fine of $800 was imposed on defendant, which he paid under protest. The errors assigned and argued relate to the drawing of the grand jury which returned the indictment in question; the regularity of its proceedings in the particulars hereinafter mentioned; the refusal to submit to the jury certain instructions requested by defendant; and the refusal to set aside the verdict and grant a new trial upon the ground that the verdict was a compromise verdict.

For the plaintiff in error there was a brief by *Hoyt, Doe, Umbreit & Olwell,* and oral argument by *A. C. Umbreit* and *F. M. Hoyt.* They contended, *inter alia,* that an opinion or impression of a juror as to the guilt or innocence of one accused of crime constitutes a well recognized ground of challenge. Such opinion or impression is at least a *prima facie* cause for exclusion. *Sneed v. State,* 47 Ark. 180; *Zimmerman v. State,* 56 Md. 536. Although some cases hold that an opinion or impression which requires evidence to remove does not necessarily disqualify a juror, yet the majority of cases hold that such an opinion does disqualify. *State v. Beuerman,* 59 Kan. 586; *Marion v. State,* 20 Neb. 233; *State v. Lattin,* 19 Wash. 57; *Greenfield v. People,* 74 N. Y. 277; *Palmer v. State,* 42 Ohio St. 596; *Polk v. State,* 45 Ark. 165; *Stephens v. People,* 38 Mich. 739; *Brown v. State,* 57 Miss. 424; *Dugle v. State,* 100 Ind. 259; *State v. Ricks,* 32 La. Ann. 1098; *Myers v. Comm.* 79 Pa. St. 308; *State v. Culler,*

82 Mo. 623. The fact that the court by extremely leading and suggestive questions induced the juror to explain his answers and thus apparently neutralized their natural and logical effect does not alter the situation or establish the qualification of the juror. *Coughlin v. People,* 144 Ill. 140, 38 N. E. 1. If the examination of a juror shows that he is disqualified, such subsequent statements that he can be fair and impartial, render a verdict according to the law and evidence, and will give the defendant the benefit of the presumption of innocence and of a reasonable doubt, are immaterial and do not qualify. *People v. Miller,* 125 Cal. 44; *Meyers v. State,* 97 Ga. 76, 95; *Woods v. State,* 134 Ind. 35; *State v. Start,* 60 Kan. 256; *People v. Evans,* 72 Mich. 367; *State v. Foley,* 144 Mo. 600; *Cancemi v. People,* 16 N. Y. 501; *Fouts v. State,* 7 Ohio St. 471; *Comm. v. Cleary,* 148 Pa. St. 26; *State v. James,* 34 S. C. 49; *Galicke v. State,* 47 Tex. Crim. Rep. 296; *State v. Clark,* 42 Vt. 629; *Washington v. Comm.* 86 Va. 405; *State v. Rutten,* 13 Wash. 203. The great weight of authority is in favor of the doctrine that testimony of good reputation may in itself be sufficient to generate a reasonable doubt, and if an instruction to that effect is requested it should be given. *Fields v. State,* 47 Ala. 603, 11 Am. Rep. 771; *Felix v. State,* 18 Ala. 720; *Springfield v. State,* 96 Ala. 81, 38 Am. St. Rep. 85; *Wagner v. State,* 107 Ind. 71, 57 Am. Rep. 79; *State v. Northrup,* 48 Iowa, 583, 30 Am. Rep. 408; *State v. Lindley,* 51 Iowa, 343, 33 Am. Rep. 139; *Comm. v. Leonard,* 140 Mass. 473, 477; *People v. Jassino,* 100 Mich. 536; *People v. Laird,* 102 Mich. 135; *Hanney v. Comm.* 116 Pa. St. 322; *Remsen v. People,* 43 N. Y. 6; *People v. Brooks,* 131 N. Y. 321; *State v. Barth,* 25 S. C. 175, 60 Am. Rep. 496; *State v. Daley,* 53 Vt. 442, 38 Am. Rep. 694; *Becker v. Comm.* (Pa.) 9 Atl. 510; *People v. Hancock,* 7 Utah, 170, 25 Pac. 1093; *State v. Sauer,* 38 Minn. 438, 38 N. W. 355; *State v. Holmes,* 65 Minn. 230, 68 N. W. 11; *People v. Van Dam,* 107 Mich. 425, 65 N. W. 277; *Redd v. State,* 99 Ga. 210, 25 S. E. 268;

*Shropshire v. State,* 81 Ga. 589, 8 S. E. 450; *People v. Ashe,* 44 Cal. 288, 292; *People v. Bell,* 49 Cal. 485; *People v. Doggett,* 62 Cal. 27; *Jupitz v. People,* 34 Ill. 516; *Stewart v. State,* 22 Ohio St. 477; *State v. O'Connor,* 31 Mo. 389.

For the defendant in error there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and by *F. E. McGovern,* district attorney, of counsel, and oral argument by *Mr. McGovern.* They argued, among other things, that Dewey was an impartial and fully qualified juror. *Baker v. State,* 88 Wis. 140, 150–153; *Hughes v. State,* 109 Wis. 397, 401–403; *Sutton v. Fox,* 55 Wis. 531, 534–540; *Grace v. Dempsey,* 75 Wis. 313, 320, 321; *People v. Hughson,* 154 N. Y. 153, 160. Such an instruction as that asked with reference to the testimony as to defendant's good reputation has been held erroneous in the following cases: *Grant v. State,* 97 Ala. 35, 11 South. 915; *Miller v. State,* 107 Ala. 40; *Goldsmith v. State,* 105 Ala. 8, 16 South. 933; *Briggs v. Comm.* 82 Va. 554; *State v. McNamara,* 100 Mo. 100, 107; *Olds v. State,* 44 Fla. 452, 33 South. 296; *Hammond v. State,* 74 Miss. 214; *Maclin v. State,* 44 Ark. 115; *State v. Snow,* 3 Penne. (Del.) 259, 51 Atl. 607. See, also, *State v. Leppere,* 66 Wis. 355, 360; *Schutz v. State,* 125 Wis. 452, 458; 12 Cyc. 600.

TIMLIN, J. The defendant demurred to the indictment, but, evidently aware that the alleged irregularities in the drawing of and in the proceedings by the grand jury did not appear on the face of the indictment and that the questions he desired to present could not be raised by demurrer, there was presented, upon motion to quash the indictment and opposing affidavits, a state of facts showing that the jury commissioners for Milwaukee county in June, 1903, selected a list of persons to serve as grand jurors in that county for the ensuing year and entered the names upon a suitable record book, certified to the same, and deposited such book with the

clerk of the circuit court for Milwaukee county, with whom it remained until about December 1, 1903, when it was taken to the municipal court of the same county for the purpose of drawing therefrom a panel of grand jurors to serve for the December, 1903, term of the municipal court. The book thereafter remained with the clerk of the municipal court, and from the remainder of the list therein contained there was also drawn the panel of grand jurors for the February, 1904, term of the municipal court, which indicted the defendant. After the second grand jury was drawn the book was returned to the clerk of the circuit court. The stenographer who attended the sessions and reported the testimony of witnesses before the grand jury filed his oath with the secretary of the grand jury.

Sec. 2546a, Stats. (Supp. 1906; Laws of 1903, ch. 90, sec. 2): "Immediately after such grand jury list has been completed said commissioners shall enter the names of the persons composing it upon a suitable record book kept for the purpose and shall certify over their respective signatures that such list is correctly entered and recorded therein and shall thereupon deposit such record book with the clerk of the court of such county who shall securely keep the same so that the grand jury list entered and recorded therein as aforesaid shall not become known."

We are urged, upon the grounds that this is (1) a penal statute, (2) in derogation of personal rights, (3) in derogation of common-law procedure, and (4) one creating a statutory criminal procedure, to construe this law strictly. But rules of construction are at best only secondary aids.

"A sentence, or form of words, can have but one true meaning. There can be no sound interpretation without good faith and common sense." Lieber, Hermeneutics (Hammond's ed.) 108, 109. "No display of critical ingenuity, no hollow pretense of conformity to established rules, can make an interpretation acceptable, if it evidently proceeds from any other motive than an honest desire to learn the true meaning of the text in question." Id. 290.

Herein lies the weakness of ascertaining the meaning in the first instance by formal rules. To approach a sentence or writing with a purpose of excluding from its meaning everything not covered by the express terms thereof, or by necessary-implication therefrom, is the mental attitude of the person predisposed to strict construction. To approach a sentence or writing with a purpose of including within its terms everything either covered by its words expressly or to which its provisions may by mental alertness or ingenuity be extended is the mental attitude of the person predisposed to liberal or "equitable" construction. Neither is correct. Neither is impartial. We grant that after the statute is first considered from the viewpoint of good faith, common sense, and impartiality, and from this viewpoint some question arises with regard to the inclusion or exclusion from its provisions of certain matters or things, this subordinate phase of interpretation may in some cases be determined upon a consideration of whether or not the statute is one of that class which the legislature is presumed not to have intended to be extended by interpretation; and, for the purpose of ascertaining this, the rules of interpretation classifying statutes may be consulted with benefit. We use the terms "construction" and "interpretation" as synonymous.

The futility of the general use of rules of interpretation is nowhere better illustrated than in that elaborate and learned treatise, Lewis's Sutherland's Statutory Construction (2d ed. vol. 2, pp. 1073, 1074), where the conclusion is reached that remedial statutes are liberally construed, and that remedial statutes include all those which remedy defects in the common law, or any part thereof, or remedy defects in any part of our civil jurisprudence generally. The author therefore hardly escapes from the conclusion that all statutes are to be liberally construed. In the same way, by application of that oft-quoted rule that statutes in derogation of the common law are to be strictly construed, it is easy to establish that all statutes

except those needless statutes declaratory of the common law should receive a strict construction. We shall approach the consideration of this statute, therefore, without either favor or hostility, neither leaning to strict nor to liberal construction, and only invoking rules of interpretation after doubts otherwise unsolvable arise.

We consider first that the statute is a general law applicable to every county in the state. The circuit courts always have criminal jurisdiction in this state, whatever other courts may exist. Const. art. VII, sec. 8. The legislature may create municipal courts for a municipality or inferior courts for the county. Const. art. VII, sec. 2. "There shall be a clerk of the circuit court chosen in each county." Const. art. VII, sec. 12. The statutes relating to municipal and inferior courts present quite a variety of regulations and conditions. In how many of them is there a "clerk of the court of such county?" Certainly not in those which, while having a separate clerk, are limited in their jurisdiction to cities. If the circuit court has criminal jurisdiction, should there be two lists and two books kept? The statute mentions only one. If we cannot find warrant in the law for two grand jury lists for a county, and we are confined to the question which clerk is more nearly within the above-quoted words, the clerk of the municipal or inferior court or the clerk of the circuit court, would we not ordinarily understand it to refer to the latter? Why should we select the particular and inferior instead of the general and superior? The third section of the act in question—sec. 2546b, Stats. (Supp. 1906; Laws of 1903, ch. 90, sec. 3)—contains words indicating that the list is to be used in selecting a grand jury for more than one court: "Whenever any court or judge thereof shall direct a grand jury to be summoned." The grand jury is to be drawn in the presence of the commissioners and "the judge of the court ordering the grand jury." The persons drawn shall be "the grand jury for said court." We must hold that this statute

requires this list and book to be filed with the clerk of the circuit court and that the proceedings in the case at bar were in this respect regular.

Premising that the grand jury list was filed in the first instance with the proper officer, as required by statute, a consideration of other statutes upon the same subject matter leads to the conclusion that it must be removed thence (in proper custody) to the office of the clerk of that inferior court in which the grand jury is to be drawn. The fact that this book and list remained in the office of the clerk of the municipal court from December, 1903, until after February, 1904, was an irregularity, it is true, but we are unable to see that any prejudice to the defendant resulted therefrom.

The stenographer which the grand jury is authorized to employ is required to "make and file an oath faithfully to report and transcribe all the proceedings before the said grand jury and to keep inviolate the secrecy required by law to be kept relative to such proceedings." No designation of the place of filing or the person with whom the oath must be filed is found in the act. The oath must evidently be an affidavit in writing. It might with almost equal propriety be filed with the clerk of the court of which the grand jury at this stage of the proceedings has become a part, or with the clerk of the grand jury. The former would be more conducive to permanency, the latter to secrecy. We incline to the view that it should be filed with the clerk of the grand jury, as was done in this case. But any error in this respect could not have the effect of making the stenographer a disqualified person or an interloper among the grand jurors. *State ex rel. Dithmar v. Bunnell, post,* p. 198, 110 N. W. 177. Besides, here again no prejudice to the defendant resulted.

"No indictment or information shall be deemed invalid nor shall the trial, judgment or other proceedings thereon be affected: . . . by reason of any other defect or imperfection in matters of form which shall not tend to the prejudice of the defendant." Sec. 4659, Stats. (1898).

"No *indictment, information, process, return or other pro-*
*ceedings* in a criminal case in the courts or course of justice
shall be abated, quashed or reversed for any error or mistake
where the person and the case may be rightly understood by
the court, and the court may, on motion, order an amendment
curing such defect." Sec. 4706, Stats. (1898).

These statutes are in the interest of the public and not un-
just to the accused because they secure to him a trial on the
merits, and they should be applied to and govern the decision
of every criminal case, making unavailing all exceptions ex-
cept such as relate to rulings which the court can see, from
the record returned, actually prejudiced the defendant in his
defense upon the merits.

Francis E. Dewey, one of the petit jurors, examined as to
his qualifications, testified that he did not know defendant,
had formed or expressed no opinion as to defendant's guilt or
innocence, was conscious of no bias or prejudice against him,
had no interest in the result of the trial, and knew of nothing
to prevent him (Dewey) from deciding the case fairly and
impartially according to evidence. He had, however, read of
the case in the newspapers about the time the indictment was
returned, and from the fact that the grand jury returned an
indictment against the defendant he would presume that there
was more chance of defendant being guilty than some man
against whom no indictment had been returned. This fact
created a presumption in the juror's mind that the defendant
was possibly, not probably, guilty, but he would have the
same impression if the defendant had been brought into court
in the ordinary way after preliminary examination. He
thought he could say, notwithstanding this, that his mind was
absolutely free from all opinion as to the guilt or innocence of
the defendant, for this idea was not strong enough to be an
opinion—it was but an impression. He thought that the de-
fendant was more possibly guilty than a man against whom
no indictment had been returned, and the fact of an indict-
ment he considered some evidence that the defendant was pos-

sibly guilty, but this impression could be easily removed by evidence to the contrary, and he knew it was not incumbent on the defendant to prove his innocence, but that it was incumbent on the state to prove defendant guilty. He said that it would require evidence to remove his impression, but he could enter upon the trial with a mind absolutely free from any impression as to the guilt or innocence of defendant; that his impression was very slight and could easily be removed, but he did not think a grand jury would indict an innocent man. He knew that a person charged with crime, even when indicted by a grand jury, is presumed to be innocent until the evidence shows him to be guilty beyond a reasonable doubt, and he could and would give the defendant the benefit of that presumption, and he had not in his mind any opinion, feeling, or impression that the defendant was probably guilty, but only that he was possibly guilty; that a man who had been indicted by seventeen men was more likely to be guilty than a man who had not been so indicted. The juror was challenged for cause, and the challenge being overruled the defendant duly excepted. All such inquiries are necessarily somewhat metaphysical, but, as we understand the mental condition of this juror as described by himself, as between defendant and one against whom no indictment was found or legal charge made, there was a greater possibility or more likelihood of the defendant being guilty than there was of such other person being guilty. But with reference to the other question, of the guilt or innocence of defendant, he had no preconceived opinion, no bias or prejudice, and understood and thought he could apply the presumption of innocence in defendant's favor. The distinction is very subtle, and we are glad to be relieved from passing upon its soundness. We hold that the metaphysical test applied to this juryman was not within the proper scope of an examination into his qualifications and that the juryman was competent and qualified, without reference to these subtle distinctions which are much easier of utterance than of explanation.

Niezorawski v. State, 131 Wis. 166.

The instructions requested by the defendant and refused by the court are not correct in law, and the subject thereof is much better covered in the charge given by the court. With reference to evidence of the good reputation of defendant the instructions requested were:

"If you believe the testimony of the witnesses called who testified to the good reputation of the defendant as to his honesty and integrity, such testimony may be in itself sufficient to raise in your minds a reasonable doubt as to his guilt of the offense charged in the indictment, and if you entertain such doubt you must return a verdict of not guilty."

The defendant had no more right to have this evidence separately pointed out by the court to the jury as such which "may be in itself sufficient to raise a reasonable doubt" than he would have to take any other item of evidence from which an inference favorable to the defendant might be raised and call it separately to the attention of the jury with this particular comment, almost suggestion. The charge of the court on this subject shows the proper way of presenting such matters to the jury by instruction. We quote it for precedent:

"Testimony has been received as to the good reputation of the defendant for honesty and integrity previous to the time it is alleged he committed the offense charged in the indictment. Such testimony of good reputation should be considered by you in connection with all the other evidence in the case, and if after such consideration you entertain any reasonable doubt as to the guilt of the defendant, you must acquit him; but if from all the evidence in the case, including the testimony as to the good reputation of the defendant, you are satisfied of his guilt beyond a reasonable doubt, then it is immaterial what his reputation has heretofore been as to honesty and integrity."

The instruction requested, as follows, was not proper to be given, in that it directed, not merely permitted, the jury to disregard the testimony, and in that it limited the corroborating testimony to witnesses, thereby excluding circumstances

and documents, and in that it required corroboration by "witnesses." It therefore was properly refused.

"If from such testimony you are satisfied that the said witness has been impeached, or you have a reasonable doubt on account of such testimony as to his credibility, you should disregard his testimony given in this case, except as to those parts, if any, in which such testimony has been corroborated by other credible witnesses."

It is next contended that because the jury accompanied their verdict of guilty with a recommendation of mercy, and immediately thereafter and before separating handed up to the trial judge a written request for leniency toward the defendant, we must presume that the verdict of guilty was a compromise verdict and must be set aside. This contention cannot be sustained. Verdicts of this kind were sustained in the following cases: *Stephens v. State,* 51 Ga. 236; *State v. Potter,* 15 Kan. 302; *State v. Gill,* 14 S. C. 410; *People v. Lee,* 17 Cal. 76; *Hicks v. State,* 25 Fla. 535, 6 South. 441; *Penn v. State,* 62 Miss. 450.

We find no prejudicial error in this case, hence the judgment should be affirmed.

*By the Court.*—The judgment of the municipal court is affirmed.