MAINVILLE, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 22—November 16, 1920.*

*Criminal law: Drawing from jury list: Absence of counsel: Continuance: Discretion of court: Jurors: Qualification: Examination: Assault.*

1. Where counsel for the defendant had full opportunity to examine each juror and availed himself of such opportunity when the trial was entered upon, his absence at the time when names were struck by defendant from the jury list, under sec. 42, ch. 303, Laws 1913, was not prejudicial to defendant.

2. The refusal of the trial court to grant a continuance on the ground that defendant's counsel was busy trying a case in another court was not prejudicial to defendant, where another member of the firm of which such counsel was a member, or a lawyer employed by it, was present and ably defended accused.

3. Judicial action on an application for a continuance is a matter resting largely in the sound discretion of the trial court, and its refusal to grant it will not be interfered with unless resulting in manifest prejudice to the party asking it.

4. A juror who says he can and will give the defendant the benefit of the presumption of innocence; who can and will disregard any opinion he may have formed or expressed as to defendant's guilt or innocence; and who can and will try defendant

impartially on the evidence given in court and on that alone, is competent.

5. While reasonable latitude should be given parties in the examination of jurors to gain knowledge as to their mental attitude toward the issues to be tried for the purpose of aiding them in striking, if not successful in sustaining a challenge for cause, such scope does not extend to an inquiry into the juror's attitude towards a particular witness who is expected to testify in the case.

6. Under sec. 4377, Stats., an assault with intent to do great bodily harm .is the same whether committed in a heat of passion or in a cool, deliberate state of mind.

7. In a prosecution for assault it was sufficient for the court to submit as possible verdicts, assault being armed with a dangerous weapon with intent to kill, under sec. 4376, Stats.; assault evincing a depraved mind regardless of human life, under sec. 4374a; assault with intent to do great bodily harm. under sec. 4377; assault without any felonious intent, under sec. 4696; and not guilty, where he correctly instructed the jury as to an assault and charged that if the intent to do great bodily harm was lacking they could find simple assault.

ERROR to review a judgment of the municipal court of Langlade county: ARTHUR GOODRICK, Judge: *Affirmed.*

Plaintiff in error, *John Mainville,* hereinafter called the defendant, was charged with the crime of an assault, being armed with a dangerous weapon, with intent to kill one Mrs. Lillie; also with assault under sec. 4374a, Stats., and with an assault with intent to do great bodily harm under sec. 4377. He was convicted of the latter and sentenced to three years' imprisonment in the state prison at Waupun. To review the correctness of such conviction he has sued out a writ of error to this court.

For the plaintiff in error there was a brief by *Martin. Martin & Martin,* and oral argument by *Gerald F. Clifford,* all of Green Bay.

For the defendant in error there was a brief by the *Attorney General, J. F. Baker,* assistant attorney general, and *A. N. Whiting,* district attorney of Langlade county. and oral argument by *Mr. Baker.*

VINJE, J. Since only procedural errors are assigned the facts need not be stated in detail. It appears that defendant was living in Antigo with his wife, who was about thirty years of age; that she had known one Parsons for over fifteen years. Parsons was a widower living with one Mrs. Lillie as his housekeeper, who defendant claims was also his mistress. Defendant further claims that Parsons had been intimate with his wife and that Mrs. Lillie had connived and assisted Parsons in securing such intimacy. It is claimed that the day before the shooting defendant first learned through his wife of the relations existing between her and Parsons, and that on the day of the shooting he learned that such intimacy had first occurred when defendant's wife was only thirteen years of age. The day of the shooting defendant bought a revolver and carried it with him. He and Parsons were railroad employees on the same run. Towards evening defendant went to the Parsons home, where he saw Parsons and Mrs. Lillie in the yard. He said, "I want to speak to you two a minute." "Me too?" Mrs. Lillie asked, and he said "Yes." The three walked to the rear of the house, where he asked Parsons to sit down and began to question him as to his relations with his wife. Mrs. Lillie became frightened and sought to go into the house to telephone, but the defendant told her to stay right there or he would shoot her. After another question to Mr. Parsons he fired a shot at him. The latter started to run away and defendant followed him past where Mrs. Lillie stood and fired another shot at Parsons, who died shortly after from the effects of his wounds. As soon as defendant had fired his last shot at Parsons he turned around and fired at Mrs. Lillie. The shot took effect in her side and she fell. While she was lying upon the ground defendant fired another shot at her and hit her in the neck. None of the wounds were fatal and Mrs. Lillie was a witness upon the trial.

We are satisfied from the whole evidence that the de-

Mainville v. State, 173 Wis. 12.

fendant received a practical pardon from the jury as to the offense he was actually guilty of, and was convicted of the lesser offense because under the evidence they could not acquit him. The evidence of Mrs. Lillie and other eye-witnesses was too positive, direct, and conclusive, and the defense of self-defense which had secured an acquittal on a former trial for the killing of Parsons was not serviceable on this trial. The unwritten law was not effectively available against Mrs. Lillie.

Many errors of procedure are assigned and argued in the brief and orally. Only a few of them seem to be of sufficient importance to merit separate treatment.

On February 10, 1920, the court, in pursuance of an arrangement made some time previously with counsel for defendant, proceeded to draw a jury, or rather the nucleus for a jury, pursuant to sec. 42, ch. 303, Laws 1913. Twenty-eight names are drawn by the clerk from a jury list and each party strikes alternately six, and those whose names remain are summoned as a venire in the case, and each party is entitled to two peremptory challenges. The jury from then on is selected as in the circuit court. Defendant's counsel, Mr. Martin, was not present, though he knew when the jury would be drawn, and the court directed the defendant to strike or to call in counsel to assist him. The defendant exercised his strikes and the state its, and those not struck were summoned for the day of the trial, when the actual jury that tried him was impaneled. A great many talesmen were summoned before the jury was selected, and our attention is not called to any fact, nor can we conceive of any, whereby defendant was prejudiced by the absence of his counsel when the names were struck from the list drawn by the clerk. Counsel had full opportunity to examine each juror and he availed himself of that opportunity when the trial was entered upon.

Notwithstanding the fact that the case had been set for trial a long time in advance, at a date agreeable to counsel

for defendant when set, he was not present at the opening of the trial and asked for a continuance on the ground that he was engaged in the trial of another case in another court. The continuance was refused. Another member of the Martin firm, or a lawyer employed by the firm, was present, and it appears from the record that he ably defended the accused, and that the latter was in nowise prejudiced by the refusal of the continuance. Courts cannot await the convenience of attorneys, and especially of such busy attorneys as Mr. P. H. Martin. If they did, their work would never be done. It is perhaps a penalty that an able and busy lawyer pays that he cannot personally try every case that comes to his firm or that he would like to try. But in these days of shorthand service it is quite easy to put any member of the firm in possession of the theory and points of the case, especially so where, as here, all are able lawyers capable of handling difficult cases. This case presented no difficulties to the defense except the facts constituting the offense, and these were beyond the cure of the most able and skilful lawyer.

Judicial action upon an application for a continuance is a matter resting largely in the sound discretion of the trial court, and its refusal to grant it will not be interfered with unless resulting in manifest prejudice to the party asking it. *Miller v. State,* 139 Wis. 57 (119 N. W. 850) and cases cited on page 66. We find no such prejudice here.

Error is alleged because peremptory challenges to the jurors Hanzel and Uphoven were not sustained. On the *voir dire* the juror Hanzel testified:

I am not acquainted with the defendant. I lived in Antigo at the time of the shooting. I followed the other case when it was tried. I attended the court during its trial. I have discussed the guilt or innocence of the defendant with reference to Mrs. Lillie, and I have expressed an opinion which I have at the present time and which it would take evidence to remove. It shouldn't be so firmly fixed in my mind that it would influence me in any way in rendering a

verdict. Whether it would "there is a question." The opinion I formed as to defendant's guilt or innocence in this case was based on my being present in the court room hearing the testimony in the last trial.

He further testified:

It is not true that it would require the introduction of evidence in this case before I would give way to the previous formed opinion I entertain. I would dismiss it if I sat on the jury. I could dismiss it. I don't think it would be impossible, but it might probably make it hard for me to do it. I think I was present at the trial twice; one of the days was when the attorneys were summing up the case to the jury.

The juror Uphoven testified:

I came to a conclusion that defendant was either right or wrong in the other case. I did not express any opinion on this case. It did not leave any impression on my mind. I heard so many different ways that I did not think which was what. I read in the Antigo Journal the entire trial in the newspaper report. That purported to state part of what the witnesses testified to, and I read it and discussed the trial of the case. According to the paper I formed an opinion as to the merits of that case. I did not know about the other case coming up. It was told to me how the shooting was done. They did not leave out the shooting of Mrs. Lillie. It was discussed just the same as the shooting of Parsons. At that time they stood on the same basis so far as my opinion was concerned. Independent of this actual court proceeding as to how the facts actually happened, I had an opinion on one just the same as I did on the other. I had no opinion as to whether he was right or wrong as to the shooting of this woman and shooting this man.

In *Baker v. State,* 88 Wis. 140, 59 N. W. 570; *Niezorawski v. State,* 131 Wis. 166, 111 N. W. 250; and in *Burns v. State,* 145 Wis. 373, 128 N. W. 987, this court has had occasion to discuss the question of what constitutes an impartial juror. The rule deducible from these and other cases is that a juror who says he can and will give the defendant the benefit of the presumption of innocence; who

can and will disregard any opinion he may have formed or expressed as to his guilt or innocence, and who can and will try him impartially upon the evidence given in court and upon that alone, is competent.    In this age of universal newspaper reading and publication of news any other rule would be unworkable.    An impartial jury is all the law requires.    It is not necessary to have one ignorant of all the facts which the evidence may disclose or devoid of all impressions formed from reading, hearsay, or a partial disclosure of the facts.    Justice is arrived at from knowledge impartially applied; and the conscientious juror who regards the sanctity of his oath and senses the importance to the defendant and to the state of a just verdict will make true deliverance upon the evidence notwithstanding tentative opinions or impressions previously acquired from newspaper reading or from a partial knowledge of the facts in the case. 16 Ruling Case Law, 265.

Error is also alleged because the court refused to permit the jurors to be examined as to the general reputation of Mrs. Lillie.    It is said that, since the state had announced that Mrs. Lillie would be a witness in the case, defendant had a right to know the attitude of the jurors towards her testimony.    While reasonable latitude should be given parties in the examination of jurors to gain knowledge as to their mental attitude towards the issues to be tried for the purpose of aiding them in striking, if not successful in sustaining a challenge for cause, such scope does not extend to an inquiry into the juror's attitude towards a particular witness who is expected to testify in the case.    *Chybowski v. Bucyrus Co.* 127 Wis. 332, 106 N. W. 833.    To so extend it would be to permit parties to get an advance opinion of the juror as to the credit he would give a certain witness. This jurors should not be required to give.    16 Ruling Case Law, 281.    Their duty is to weigh the whole evidence when it is in and then to give such credit and weight to the testimony of each witness as in their judgment it is entitled to after they have seen the witness on the stand and can judge

of the reasonableness of his testimony, his apparent truth-
fulness, and willingness to testify. The general reputation
of a prospective witness is not an issue or even a collateral
issue when the jury is impaneled.

Defendant offered to prove statements made to him by
his wife the day before and the day of the shooting, as to
her relations to Parsons. They were offered in evidence for
the purpose of showing that the shooting was done in a heat
of passion. Had defendant been charged with murder, then
the evidence would have been competent as tending to re-
duce the killing from murder to manslaughter. But the
offense of which defendant was convicted was one not de-
pending upon the question whether or not it was done in a
heat of passion. Assault with intent to do great bodily
harm is the same whether committed in a heat of passion or
in a cool, deliberate state of mind. Nor was there an issue
before the jury under either of the charges against the de-
fendant that made heat of passion a factor in the case. No
claim is made that defendant had no mental capacity to
form an intent. The court therefore properly rejected the
evidence.

The court submitted the following verdicts to the jury:
(a) Assault, being armed with a dangerous weapon, with
intent to kill, under sec. 4376, Stats.; (b) assault evincing
a depraved mind regardless of human life, under sec. 4374a;
(c) assault with intent to do great bodily harm, under sec.
4377; (d) assault without any intent, under sec. 4696; and
(e) not guilty. Full and correct instructions as to each
offense were given by the court. It correctly defined an
assault and told the jury that if the intent to do great bodily
harm was lacking they could find simple assault. This,
under the circumstances, in connection with the submission
of a verdict of not guilty, was sufficient. The jury found
an intent to do great bodily harm upon abundant competent
and credible evidence, so simple assault dropped out of the
case. The jury never reached the question.

The other errors assigned are not well taken. We are

satisfied that the defendant had a fair and impartial trial, was ably defended, and should be well satisfied with the result considering the gravity of the charges against him and the strong evidence supporting them.

*By the Court.*—Judgment affirmed.