HAMMILL, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–052–CR. Argued May 2, 1979.—Decided May 30, 1979.*
(Also reported in 278 N.W.2d 821.)

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error there was a brief by *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general, and oral argument by *Chris Heikenen,* assistant attorney general.

BEILFUSS, C. J.   The sole issue before us is whether the trial court abused its discretion during the *voir dire* examination of one of the jurors.

After a two-day jury trial, Jerold T. Hammill was found guilty of first-degree murder, attempted first-degree murder and rape in violation of secs. 940.01,

939.62 and 944.01, Stats., for the unprovoked and brutal attack on a young couple during the early morning hours of July 4, 1975 in an isolated part of Goose Island Park in Vernon County. The defendant entered pleas of not guilty and not guilty by reason of mental disease or defect. The second phase of the bifurcated trial resulted in a jury finding that defendant Hammill was not suffering from a mental disease or defect at the time of the commission of the three crimes.

Hammill was sentenced to life imprisonment on the conviction of first-degree murder, an indeterminate term of imprisonment not to exceed twenty-nine years and nine months on the conviction of rape and an indeterminate term of imprisonment not to exceed thirty years on the conviction of attempted first-degree murder. The sentences were imposed consecutive to each other and consecutive to the sentence which the defendant was then serving. A postconviction motion was timely made for an order vacating the judgment and granting a new trial. The motion was denied.

The defendant has obtained writs of error to review both the judgment of conviction and the order denying postconviction relief.

Under the United States constitution a criminal defendant in a state court is guaranteed an impartial jury by the Sixth Amendment as applied to the states through the Fourteenth Amendment.[1] Principles of due process also guarantee a defendant a fair trial by a panel of impartial jurors. In Wisconsin a defendant is entitled to a trial by an impartial jury as a matter of state constitutional law under sec. 7, art. I of the Wisconsin Constitution.[2]

[1] *Duncan v. Louisiana*, 391 U.S. 145 (1968); *Ristaino v. Ross*, 424 U.S. 589, 595 (1976); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

[2] *"Right of accused.* Section 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and coun-

Control of the *voir dire* examination rests primarily with the trial court.[3] *Voir dire* "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Conners v. United States,* 158 U.S. 408, 413 (1895) ; *Ham v. South Carolina,* 409 U.S. 524, 527–28; *Aldridge v. United States,* 283 U.S. 308, 310 (1931). The trial court has broad discretion as to the form and number of questions to be asked. The exercise of this discretion and the court's restriction upon inquiries, however, are subject to "the essential demands of fairness." *Aldridge, supra* at 310.

The trial court's discretion in the impaneling of a jury was early recognized by Wisconsin courts. In *Grace v. Dempsey,* 75 Wis. 313, 320–21, 43 N.W. 1127 (1889), this court declared:[4]

"In so far as there is an absence of statutory regulation or rule of court, the trial court must necessarily exercise a very large discretion in the impaneling of a jury; and the exercise of such discretion will not be disturbed except in cases of its abuse or the violation of some rule of law. *Santry v. State,* 67 Wis. 67; *Sutton v. Fox,* 55 Wis. 531; *Olson v. Solveson,* 71 Wis. 663; Thomp. & M. Juries, secs. 258, 270, 271."

---

sel; to defend the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

[3] *Lozon v. Leamon Bakery Co.,* 186 Wis. 84, 92, 202 N.W. 296 (1925).

[4] *Also see Mainville v. State,* 173 Wis. 12, 18, 179 N.W. 764 (1920); *State v. Herrington,* 41 Wis.2d 757, 165 N.W.2d 120 (1969).

The statute controlling the *voir dire* examination of jurors is sec. 805.08(1), and provides as follows:[5]

"805.08 **Jurors.** (1) QUALIFICATIONS, EXAMINATION. The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood or marriage to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused. Any party objecting for cause to a juror may introduce evidence in support of the objection. This section shall not be construed as abridging in any manner the right of either party to supplement the court's examination of any person as to qualifications, but such examination shall not be repetitious or based upon hypothetical questions."

The *voir dire* examination of prospective jurors in the instant case was begun and completed on the morning of November 17, 1975. Reasonably anticipating some difficulty in selecting an impartial jury for a case of such notoriety, the trial judge had previously ordered that one hundred fifty jurors be made available. The court began the examination with a series of general questions which touched on the usual topics, *i.e.*, the jurors' business and personal relationships with the parties, counsel or law enforcement personnel, sequestration problems and past experience as a victim of a criminal assault. In addition the court asked whether any juror had already formed an opinion about the case based on reports in the news media and, if so, whether that opinion could be set aside in order to leave the juror's mind open to a fair consideration of the testimony and evidence to be presented at trial, and decide the case from the evidence and the instructions of the court. Anyone expressing doubt on

[5] Sec. 805.08 is contained in a statutory chapter dealing with civil trials; however it applies to criminal trials by virtue of sec. 972.01, Stats.

the matter was promptly excused by the court. Panel member Burch did not come forward at this time.

After the preliminary selection procedures had been conducted, counsel for the parties were given the opportunity to question the remaining prospective jurors individually. The state focused its attention on each juror's ability to heed the trial court's instructions regarding reasonable doubt and his or her willingness to accord due weight to psychiatric testimony. The defendant also examined the jurors individually about possible bias against psychiatrists and, echoing the court's general questions, interrogated them closely about whether they had previously read or heard anything about the crimes involved and, if so, whether they had a strong impression as to the proper outcome of the case.

In the course of selecting a panel of twelve jury members and two alternates in all, one hundred seventeen veniremen were called. Of these eighty-six were excused for cause; forty-seven because they were unable to set aside their opinions as to the merits of the case; thirty-one because they could not be sequestered; and eight for other reasons.[6]

The defendant's objections to the trial court's conduct of the *voir dire* proceeding center solely on the individual questioning of the first venireman Mr. Burch, the only panel member who indicated that he had neither read about nor heard about nor discussed the case prior to that day. According to the defendant, the trial court abused its discretion and impinged on his right to a trial by an impartial jury both by impermissibly interjecting itself into defense counsel's questioning of venireman Burch and by refusing to grant the motion to excuse Burch for cause.

---

[6] These figures differ slightly from the totals given by the defendant in his brief, however they are accurate enough for our purposes in this opinion.

The examination of Mr. Burch was by far the most
lengthy of the individual examinations of the prospective
jurors. This was due in part to the fact that defense
counsel, in his own words, was "sort of trying out the
questions on the first one." In the course of the question-
ing the trial court frequently found it necessary to re-
phrase the defendant's questions in order to clarify the
point that the juror's decision in the case was to be based
on the testimony and evidence presented as well as on
the instructions of the law which would be given by the
court. The following colloquy is a typical example:

"*Q.* Mr. Burch as you now understand and are aware
of your own feelings as to this case are you perfectly
satisfied that you can hear the evidence in this case and
make your decision on what you hear in this courtroom
from this point on and not be influenced, not have a re-
maining influence after you hear all of this testimony
from your feelings right now. I had better reword it,
could you hear all of the testimony and arrive at a de-
cision on the basis of that testimony that you are going
to hear and not have a hangover from the feeling that
you now have as to how you want the trial to come out.
Are you perfectly satisfied that you can do that?
"*Court:* Well now Mr. Woodmansee that has to be
also coupled with the instructions of the law that he will
be given.
"*Q.* Well Your Honor respectfully I am concerned
about that because he at this point answering the ques-
tion he doesn't have any idea what the instructions are
going to contain.
"*Court:* Well that is right. The point is will he listen
to them and abide by those and apply them to the evi-
dence which is introduced in Court and from there reach
his verdict as a fair and impartial juror.
"*Q.* From what you have heard the Judge say and
myself say, do you have a fair understanding of what the
question is at this point Sir?
"*A.* Well I can understand the judge better than I can
you.
"*Q.* Not unusual at all. Well Sir, would you be more
likely to find the defendant guilty or on the other hand

more likely to find the defendant not guilty of any given offense as a result of having reached the feeling that you now have as to this case?

"*Court:* Well Mr. Woodmansee. I am going to ask Mr. Burch this question and I think that maybe that ought to terminate this—Mr. Burch regardless of what your feelings are at this point can you set them aside and listen to the evidence which is produced here in the court-room and listen to the instructions as to the law which are applicable will be given you by the Court and then reach your verdict from the evidence and the instructions only?

"*A.* Yes Sir.

"*Court:* Well alright."

Another example was occasioned by the defense counsel's attempt to determine Burch's attitude toward the defendant as a witness:

"*Q.* Do you have any feeling as to whether or not an accused person in a Court can be a credible witness on his own behalf?

"*Court:* Well again Mr. Woodmansee in the event that a defendant testifies the Court will be instructed that he is entitled to testify on his own behalf and that the same test applies to him as applies to all other witnesses produced and sworn on the trial.

"*Q.* Yes Sir but I respectfully submit that this juror being instructed is not the same as his telling me whether he has that feeling or not and I would submit that I would have the right to ask him if he has such a feeling about an accused person testifying.

"*Court:* Well Mr. Woodmansee I do not want to curtail your right to examine this jury and I want you to be able to ask those questions but we have got to start from a premise that the jury will be instructed and if that the jury under their oath as jurors will follow the instructions of the Court. Now what you are getting into is an area in terms of your asking them even before they know what there is going to be any instruction or whether there will be an instruction as to something with which they may not have had any experience.

"*Q*. Well I think that I can put the question Your Honor in acceptable terms.
"*Court:* Alright."

The latitude allowed the parties in the examination of the jurors does not extend so far as to dictate that they be allowed to ask questions which mislead or misinform or confuse a panelmember as to his responsibility in reaching a decision in the case. The trial court's supervision of defense counsel's questioning of venireman Burch was well within its discretion. In view of the fact that the court is charged with the independent responsibility of taking such steps as may be necessary to ensure that the accused receives a fair trial, *State v. Herrington, supra,* 41 Wis.2d at 763, the fact that the prosecutor did not object to the form of the questions asked by defense counsel is immaterial.

The second objection advanced by the defendant with respect to the trial court's handling of the examination of venireman Burch on *voir dire* is that the court abused its discretion by refusing to honor defendant's challenge for cause made when Burch indicated he had an impression that the defendant did in fact do something wrong. The interchange between defense counsel and Mr. Burch which immediately preceded the challenge for cause is as follows:

"*Q*. Well have you assumed at this point he has done something wrong Mr. Burch?
"*A*. Well I don't think that I was called up here for nothing.
"*Q*. You assume right now that he has done something wrong, don't you?
"*A*. Well yes or else he wouldn't be here.
"*Q*. Well I would move Your Honor that he be excused. He has made up his mind."

At this point the court undertook to examine Mr. Burch himself regarding the panelmember's ability to put aside

his opinion and consider the testimony with an open mind. The following dialogue appears at 419 of the record:

"*Court:* Mr. Burch just a moment. Now you have told me earlier that you can, whatever feelings or judgment that you have got you are going to put it aside and you are going to make your judgment based on the evidence as produced here in the instruction, is that right?
"*A.* Right.
"*Court:* Well you are still of the same opinion you can do that and will do that, is that true?
"*A.* Yes."

The court, based on the responses given by Burch, concluded that Burch would be an impartial juror. The defendant maintains that his conclusion was an abuse of discretion on the trial court's part.

The mere expression of a predetermined opinion as to guilt during the *voir dire* does not disqualify a juror *per se*. *State v. Nutley*, 24 Wis.2d 527, 546, 129 N.W.2d 155. This court in *Mainville v. State*, 173 Wis. 12, 17–18, 179 N.W. 764 (1920), characterized in realistic terms what constitutes an impartial juror:

"The rule deducible from these and other cases is that a juror who says he can and will give the defendant the benefit of the presumption of innocence; who can and will disregard any opinion he may have formed or expressed as to his guilt or innocence, and who can and will try him impartially upon the evidence given in court and upon that alone, is competent. In this age of universal newspaper reading and publication of news any other rule would be unworkable. An impartial jury is all the law requires. It is not necessary to have one ignorant of all the facts which the evidence may disclose or devoid of all impressions formed from reading, hearsay, or a partial disclosure of the facts. Justice is arrived at from knowledge impartially applied; and the conscientious juror who regards the sanctity of his oath and senses the importance to the defendant and to the state of a just

verdict will make true deliverance upon the evidence notwithstanding tentative opinions or impressions previously acquired from newspaper reading or from a partial knowledge of the facts in the case."

In *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961), the United States Supreme Court made a like declaration:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as juror will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Spies v. Illinois*, 123 U.S. 131; *Holt v. United States*, 218 U.S. 245; *Reynolds v. United States, supra.*"[7]

Whether a juror is to be dismissed for cause rests within the sound discretion of the trial court.[8] A determination regarding the sincerity of a prospective juror with regard to his ability to give the evidence in the case a fair consideration is also a matter within the trial court's discretion. As the United States Supreme Court noted in *Ristaino v. Ross*, 424 U.S. 589, 595 (1976), "the 'determination of impartiality, in which demeanor plays

---

[7] *Accord Dobbert v. Florida*, 432 U.S. 282, 302 (1977); *State v. White*, 68 Wis.2d 628, 633, 229 N.W.2d 676 (1975); *Beavers v. State*, 63 Wis.2d 597, 613–15, 217 N.W.2d 307 (1974).

[8] *Nolan v. Venus Ford, Inc.*, 64 Wis.2d 215, 220, 218 N.W.2d 507 (1974); *Nyberg v. State*, 75 Wis.2d 400, 405, 249 N.W.2d 524 (1977).

such an important part, is particularly within the province of the trial judge.' *Rideau v. Louisiana,* 373 U.S. 723, 733 (1963) (Clark, J., dissenting.)'' The trial court, which had the opportunity to confront Mr. Burch face to face and to interrogate him closely on his ability to set aside his opinion, made the determination that, in the in-chambers words of the trial judge, "this guy is about as fair and impartial and decent a juror you are ever going to find anywhere."

In *Irvin v. Dowd,* 366 U.S., supra at 723–24, the United States Supreme Court summarizes the role of an appellate court reviewing such a determination:

"The rule was established in *Reynolds* that '[t]he finding of the trial court upon that issue [the force of a prospective juror's opinion] ought not to be set aside by a reviewing court, unless the error is manifest.' 98 U.S., at 156. In later cases this Court revisited *Reynolds,* citing it in each instance for the proposition that findings of impartiality should be set aside only where prejudice is 'manifest.' *Holt v. United States, supra; Hopt v. Utah,* 120 U.S. 430.''

A review of the record in the present case reveals that the trial court allowed defense counsel great latitude in the *voir dire* examination of the jurors and perhaps to the extent that the examination was unnecessarily repetitious. The trial court did not abuse its discretion—to the contrary the court carefully conducted and supervised the selection so as to obtain a fair and impartial jury.

*By the Court.*—Judgment and order affirmed.