No. 54,219

STATE OF KANSAS, *Appellee,* v. TOMMY L. THOMPSON, a/k/a LESLIE S. THOMPSON, *Appellant.*

(654 P.2d 453)

Opinion filed December 3, 1982.

*Thomas Keith Wilson,* of Neubauer, Nordling, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for appellant.

*Robert M. Miles,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Willis K. Musick,* assistant county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Tommy L. Thompson, a/k/a Leslie S. Thompson, appeals from his conviction by a jury of one count of kidnapping (K.S.A. 21-3420) and one count of rape (K.S.A. 21-3502). The principal issue in the case was the identity of the person who committed the crimes. The defendant and his witnesses testified to an alibi defense. He raises eight points on appeal, none of which rise to the level of reversible error. We affirm.

On September 9, 1981, Susan H. was abducted at knifepoint and later raped by a young black male. About 11:15 p.m., Susan was waiting in her car for her boyfriend to finish his work at a convenience store in Liberal, Kansas. While she waited, her assailant approached, showed her a knife, forced his way into the car, and, threatening to kill her, made Susan get down on the floorboards. The man then drove the car into another area of town near a low-income housing site. He began to sexually assault Susan in the automobile but felt too confined there and forced

Susan to get out of the car and accompany him about fifty or sixty yards into a nearby field. There he forced her to partially disrobe and raped her.

After the offense took place, the man walked Susan back to her car, attempted to wipe his fingerprints off the vehicle, and then fled on foot. Susan, upset, crying and frightened, drove her car around Liberal in an attempt to find her boyfriend and, failing to do so, then drove to the vicinity of her boyfriend's home in Turpin, Oklahoma, just across the state line. After contacting her boyfriend she was returned to Liberal where the incident was immediately reported to the police and she was transported to the Liberal hospital where a rape kit was assembled. Susan was able to give the police a good description of her assailant and the clothes he wore.

About 5:00 p.m. on September 10, 1981, the defendant was arrested at his home in Liberal. The police had tracked him to his residence following tracks in the dirt of an unusual tennis shoe pattern which led from the crime scene to defendant's home. At the time of the arrest, police recovered clothing matching the description given by Susan of the clothes worn by the assailant. They also seized a knife which Susan identified at trial as the knife used to threaten her life and to force her to submit to the rape. Palm prints of the defendant were lifted from Susan's car and a blood sample also tied the defendant to the crime, corroborating Susan's testimony and indicating a positive identification.

The defendant testified that he had stopped to talk with some young woman who was just sitting in her car while he was out walking his dog on the evening of September 9th. He denied that he abducted or raped Susan. He produced witnesses who said he was at his home during the approximate times when Susan said the offenses occurred. The jury, however, found the defendant guilty on both counts.

In his first point on appeal the defendant argues that the trial court should have excluded evidence regarding the victim's identification of her assailant from a photographic lineup consisting of seven photographs. On September 12th, Susan was called to the Liberal police station to view a photo lineup. She was aware that a suspect was in custody. The defendant contends that because all of the other six photographs had dates on them

indicating they had been taken on various dates from June 22, 1980, to July 9, 1981, and only the defendant's photograph had an unreadable date, the lineup was too suggestive to be reliable. Within two minutes Susan selected defendant's picture and made a positive and definite identification of the defendant as her assailant. The argument of the appellant has been before the court on several occasions and found to be without merit. In *State v. Dotson*, 222 Kan. 487, 565 P.2d 261 (1977), we held:

"The dates printed on the front of photographs do not as a matter of law make a photographic identification procedure so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." Syl. ¶ 2.

See also *State v. Mitchell*, 220 Kan. 700, 556 P.2d 874 (1976), and cases cited therein. We have examined the photographic lineup and find no error. In addition to other evidence tying the appellant to the crime, Susan made a positive in-court identification.

Appellant's second point is also based upon his contention that the photo lineup was tainted. He sought a personal lineup to determine whether the victim could make an identification prior to her seeing him in the courtroom. Based upon the facts in this case, there was no error in denying defendant's motion for a personal lineup. *State v. Porter*, 223 Kan. 114, 574 P.2d 187 (1977).

The defendant next complains that the trial court erred in allowing the State to endorse a witness on the day the trial began. Late in the afternoon on the preceding Friday, the defendant was served with a motion to endorse a witness which he claims had been known to the State for three months or more. He argues that he was denied a right to investigate the witness and prepare to meet her testimony.

The witness, endorsed on the day of trial, was the duty nurse from the hospital where the rape kit was assembled. Her testimony was considered necessary to establish the chain of custody of the rape kit. The State asserts the endorsement of this witness did not cause any change in defense strategy, no actual prejudice has been shown by the defendant, defense counsel was allowed to interview the witness prior to trial, and the defense was not taken by surprise, as this witness was named in police reports previously available to defendant. In addition, the fact of whether

a rape had actually occurred was not in issue as the sole defense presented by the defendant was alibi.

K.S.A. 22-3201(6) makes late endorsement of the State's witnesses discretionary with the trial court. *State v. Ferguson, Washington & Tucker,* 228 Kan. 522, 526, 618 P.2d 1186 (1980). Actual prejudice to the defendant's ability to defend against the charges must be shown in order to reverse the trial court. Prejudice is not presumed in such cases. *State v. Ferguson, Washington & Tucker,* 228 Kan. at 526; *State v. White & Stewart,* 225 Kan. 87, Syl. ¶ 3, 587 P.2d 1259 (1978). No prejudice or abuse of discretion has been shown in this case.

Next, the appellant complains that it was error for the trial court not to excuse two prospective jurors for cause. Appellant contends that during voir dire, it became apparent two prospective jurors would be unable to hear the evidence in the case impartially. The voir dire examination indicates that the two prospective female jurors had already formed opinions, that the fact situation was an affront to their religious beliefs, that they were biased and unable to be open-minded, and that they would have difficulty following the court's instructions. The court, however, after additional questioning refused to excuse them for cause, indicating that it did not doubt their ability to sit as jurors and decide the case impartially and without prejudice. Our review of the record indicates that these jurors should have been excused for cause. However, we have consistently held that in the absence of a showing of prejudice there is no reversible error so long as the disqualified jurors do not actually sit on the jury. In this case, the two prospective jurors were removed by the defendant's use of two of his peremptory challenges. *In re Estate of Minney,* 216 Kan. 178, Syl. ¶ 4, 531 P.2d 52 (1975). Absent a showing that defendant was actually prejudiced by being required to use peremptory challenges to remove potential jurors who should have been removed for cause, no reversible error exists.

Next, the appellant contends there was error in the admission of hearsay testimony. When Susan went looking for her boyfriend in Turpin, Oklahoma, she stopped at a motel and called his home. A police officer was allowed to testify, over the objection of the defendant, that the motel clerk told him Susan was upset and distraught. Assuming that the statement was inadmissible hearsay, no reversible error is shown. As previously indicated, the fact of whether a rape actually occurred was not an issue and Susan's

appearance shortly after the rape had no bearing upon whether the defendant was the actual assailant. No reversible error is shown. *State v. Ambler,* 220 Kan. 560, 563, 552 P.2d 896 (1976).

Appellant's next point is that the trial court erred in not recessing the trial until the next day when one of the jurors was temporarily called away due to a family emergency. After the close of all the evidence and while counsel and the court were considering instructions, one of the jurors received word that her daughter was undergoing emergency surgery. Defendant moved for a continuance until the next morning but the court declared a recess until 4:30 p.m. and allowed the juror to leave for the hospital. The juror returned late in the afternoon, indicated the emergency was over, and that she could continue with the trial. The defendant's motion to continue the case until the next morning was renewed and again overruled. The trial was resumed at 4:30 p.m. and completed with a jury verdict late that night. The State had opposed the motion because the prosecutor would have been unavailable to complete the case the next day and final argument for the State would have to be made by an attorney who had not conducted the trial. The granting or denial of a continuance in a criminal case is a matter which rests in the sound discretion of the trial court. Absent a showing of prejudice to the defendant, and an abuse of the court's discretion, the ruling of the trial court will not be disturbed on appeal. *State v. Nelson,* 223 Kan. 251, 573 P.2d 602 (1977). No error is shown.

As his seventh point, appellant contends it was error for the court not to give his requested instruction on eyewitness identification pursuant to *State v. Warren,* 230 Kan. 385, 635 P.2d 1236 (1981). Here there was no serious question about the reliability of the identification made by Susan which was supported by other credible evidence, including defendant's palm print on her car, blood tests, footprints leading to defendant's home and the recovery of clothing identified by Susan. In addition, the court did give an instruction which required that the State prove identity beyond a reasonable doubt. See *State v. Brown,* 230 Kan. 499, 638 P.2d 912 (1982).

Finally, appellant complains of certain statements made by the prosecuting attorney during final argument. In commenting upon the defendant's alibi witnesses, the prosecutor stated:

"And then we get down to alibi witnesses. He brought in three people to give an

alibi today. Okay, first of all, let's point out that they're friends of the Defendant; no question about that. They were over at his house. Another obvious statement, they're black brothers and sisters. Right? How often do you see a black greet another black with, "Hey, brother; hi, ya, sister" — brothers and sisters. Consider the sympathy, bias, and prejudice that would be inherent here. Think about your — you're allowed to consider that, but even more important that they're black or brothers and sisters or that they're friends, more important is this possible bias in what they said."

We cannot condone the conduct of the prosecuting attorney in this case and consider the comments and argument reprehensible, unwarranted and in extremely poor taste. As we said in *State v. Moody,* 223 Kan. 699, 705, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978), "[a]ny comment, racial in nature, is dangerous ground in closing arguments" and should be avoided. However, here, as in *Moody,* no contemporaneous objection was made and as it is the general rule that reversible error cannot be based on misconduct of counsel in closing argument where no objection is made, the point is not grounds for reversal. *Moody,* 223 Kan. at 705 and cases cited therein.

The judgment is affirmed.