No. 55,205

STATE OF KANSAS, *Appellee,* v. RHEADIS OSBY MAXWELL, JR.,
*Appellant.*

(672 P.2d 590)

 Opinion
filed December 2, 1983. 

*Michael Redmon,* of Kansas City, argued the cause and was on the brief for appellant.

*J. Dexter Burdette,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Rheadis Osby Maxwell, Jr. appeals from his conviction by a jury of one count of aggravated burglary (K.S.A. 21-3716), two counts of aggravated robbery (K.S.A. 21-3427), and two counts of kidnapping (K.S.A. 21-3420). We affirm as to all counts.

Mr. Paul Clark, one of the victims, is an antique dealer in Kansas City. On the afternoon of December 27, 1981, Mrs. Clark answered the doorbell at their residence and found two men who wanted to talk with her husband ostensibly about a watch one of the men, later identified as defendant Maxwell, held in his hand. Mr. Clark indicated he would look at the watch and the two were admitted to the Clark home. The other man asked Mrs. Clark if he could use the bathroom and also asked for a drink of water. After he emerged from the bathroom Mrs. Clark showed him to the kitchen and then she retired to her bedroom. He followed her to the bedroom with a knife obtained from the kitchen. When Mrs. Clark screamed he told her to shut up or he would kill her. Mr. Clark, having heard his wife scream, demanded to know what was going on and Maxwell pulled out a knife, held it to Mr. Clark's throat and replied, "This is a hold-up. If you scream or anything, I will kill you." He then forced Mr. Clark to the bedroom where he and his cohort tied Mr. and Mrs. Clark to the bed. They then ransacked the house stealing money, jewelry, Mrs. Clark's purse and numerous other items of personal property and then departed with a third person who had appeared during the robbery.

Early the next morning one Katherine Speed was arrested on an outstanding bench warrant and as a result of an altercation or skirmish she had with another woman earlier in the evening. When arrested Ms. Speed had in her possession Mrs. Clark's stolen identification. She then advised police she had information about the Clark robbery and named the defendant as one of the participants. She also turned over to police a clock, camera

and several other items later identified as having been stolen from the Clarks. She also advised the police that Maxwell would be in municipal court later that morning and that he was wearing a ring stolen from Mr. Clark. Maxwell was arrested and at the time was wearing the Clark ring which he claimed he had purchased on the street for ten dollars. At trial the defendant testified in his own behalf and asserted an alibi defense.

Appellant's first point on appeal is that the trial court erroneously refused to grant a continuance necessary to secure the presence of a witness who would impeach Ms. Speed. Defendant testified that on the night of Ms. Speed's arrest she had stated that she tried to kill someone but at trial Ms. Speed denied any such statement. One of the police reports pertaining to her arrest indicated she told Officer Griffin of the Kansas City police department that she had tried to kill the person with whom she had the altercation earlier in the evening. Officer Griffin was not called by the State and on the second morning of trial, defense counsel attempted to have a subpoena served on Officer Griffin but was unsuccessful. Later, after the completion of the defendant's case, counsel asked for a continuance to try to locate Officer Griffin. The State opposed the motion pointing out that their files had been open to defense counsel, that defense counsel knew from the jury voir dire that Griffin would not be a witness and further that the area of questioning was a collateral issue and was not relevant or material to the case being tried. The court, having been advised that a subpoena had been issued early the morning of the second day of trial granted a continuance of fifteen to twenty minutes prior to conferring with counsel about the instructions. The defendant made no objection to the court's ruling although it was raised in defendant's motion for a new trial which was overruled.

Under K.S.A. 22-3401 a continuance may be granted either party for good cause shown. In *State v. Thompson*, 232 Kan. 364, 654 P.2d 453 (1982), we said:

"The granting or denial of a continuance in a criminal case is a matter which rests in the sound discretion of the trial court. Absent a showing of prejudice to the defendant, and an abuse of the court's discretion, the ruling of the trial court will not be disturbed on appeal." 232 Kan. at 368.

In addition to the failure of the defendant to object to the trial court's ruling, we find no abuse of discretion by the court.

Appellant next claims there was insufficient evidence to support the aggravated burglary conviction under K.S.A. 21-3716 because the Clarks voluntarily allowed him into their home, thus consenting to the defendant's entry. K.S.A. 21-3716 provides:

"Aggravated burglary is knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property in which there is some human being, with intent to commit a felony or theft therein."

It appears to be a question of first impression in this State whether entry obtained by fraud, deceit, or pretense is an unauthorized entry sufficient to support a burglary or aggravated burglary conviction. Defendant points to decisions in other states holding that if a criminal defendant is in any manner voluntarily allowed to enter a private dwelling before committing crimes therein, even if the entry is gained under false pretenses, it is nonetheless "authorized" and will not support a burglary conviction. See *People v. Peace,* 88 Ill. App. 3d 1090, 411 N.E. 2d 334 (1980). On the other hand, in *State v. Ortiz,* 92 N.M. 166, 584 P.2d 1306 (App. 1978), *cert. denied* 92 N.M. 79 (1978), the New Mexico Court of Appeals held that where consent to enter is obtained by fraud, deceit or pretense, the entry is trespassory because it is based on an erroneous consent and therefore is similar to constructive breaking at common law and constitutes an unauthorized entry sufficient to sustain a burglary conviction.

Blackstone, in his early commentaries, stated:

"[T]o knock at the door, and upon opening it to rush in, with a felonious intent: or, under pretence of taking lodgings, to fall upon the landlord and rob him; or to procure a constable to gain admittance, in order to search for traitors, and then to bind the constable and rob the house; all these entries have been adjudged burglarious, though there was no actual breaking; for the law will not suffer itself to be trifled with by such evasions . . . ." 4 Blackstone's Commentaries on the Laws of England, p. 226 (Christian's 15th Ed. 1809).

In 13 Am. Jur. 2d, Burglary § 13, we find:

"Constructive breaking within the law of burglary occurs where the entry is accomplished by means of fraud or threats, or by confederacy with servants residing in the house. This is so because the law regards force and fraud with equal abhorrence, and an invasion, for the purpose of stealing, of the tenant's possession by one means or the other, is all one in the eyes of the law. It is also to be observed that the fraud included in a theft does not necessarily involve fraud

in the entry, for where the owner gives an open license to all comers to enter, as in the case of a merchant, the fraudulent intent may be formed after a rightful entry.

"Where entry has been effected under pretense of having business with the owner or of paying a social visit, it has been well said that the law is not so impotent as to permit a burglar to enter a house under such circumstances and yet evade the responsibility of his act. But where the opening of the door is procured by a trick, the entry must be made so soon thereafter that there is no reasonable opportunity to refasten the door; otherwise there is not a sufficient breaking." pp. 328-29.

In the present case the defendant and his cohort were allowed to enter the Clark residence for the sole purpose of speaking with Mr. Clark about the value of defendant's watch. It is clear, however, that Maxwell and his friend intended to rob the Clarks at the time they entered the house and gained entry by subterfuge.

We hold that where the consent to enter any of the structures or vehicles listed in K.S.A. 21-3715 and 21-3716 is obtained by fraud, deceit or pretense the entry is not an authorized entry under the statute in that it is based on an erroneous or mistaken consent. Any such entry is unauthorized, and when accompanied by the requisite intent is sufficient to support a burglary or aggravated burglary conviction. Appellant's argument lacks merit.

Appellant next contends the fourth amended information filed in this case is fatally defective for failing to specify what type of felony defendant was intending to commit at the time of his entry into the Clark residence. The aggravated burglary count of the amended information reads:

"COUNT III

"At the County of Wyandotte, State of Kansas, for a further, different and third count herein, on or about the 27th day of December, 1981, one Rheadis Osby Maxwell, Jr., and one Leon Herbert Caldwell did unlawfully, willfully, feloniously, knowingly and without authority enter into a building, to-wit: a residence located at 648 Seminary, Kansas City, Kansas, in which there was some human being, to-wit: Paul and Belva Clark with the intent to commit a felony therein, in violation of K.S.A. 21-3716."

An identical question was before the court in *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1973). In *Lora* the burglary counts alleged simply that "the defendant did on a certain day 'unlawfully, wilfully, knowingly, and without authority enter into and remain within a building . . . with the intent to commit a

felony.'" 213 Kan. at 187. Lora claimed the information was fatally defective for failing to specify a particular felony, because without knowing what evidence the State would present it was impossible for him to disprove the element of intent to commit a felony. We held:

"An information charging burglary is defective in form unless it specifies the ulterior felony intended by an accused in making the unauthorized entry . . . .

"Such a defect does not, however, automatically result in prejudicial error. . . .

. . . .

"If the ulterior felony intended in a burglary is made clear at the preliminary hearing or by the context of the other charge or charges in the information the failure to allege the specific intended felony does not constitute reversible error. Such failure cannot result in surprise or be considered prejudicial to the defendant's substantial rights at trial when the intended felony was made clear in advance of trial." 213 Kan. at 187-189.

In the present case the underlying felony was made clear to defendant before trial by both the context of the other charges in the information and the preliminary hearing. The aggravated burglary count in the fourth amended information, Count III, follows two counts of aggravated robbery under K.S.A. 21-3427 which arose out of the same set of operative facts, defendant's entrance and actions in the Clark residence. In addition, a preliminary hearing at which the two victims testified was held on February 23, 1982, and defense counsel on appeal concedes "the preliminary hearing may have clarified what felonies the State was referring to. . . ." However, appellant argues that the court's instructions compounded the error when the court in its instruction IV stated:

"The defendant is charged with the crime of Aggravated Burglary. The defendant pleads not guilty. To establish the charge of Aggravated Burglary, each of the following claims must be proved:

1. That the defendant knowingly entered into a residence at 648 Seminary, Kansas City, Kansas;

2. That the defendant did so without authority;

3. *That the defendant had the intent to commit theft therein;*

4. At the time, there were human beings, Paul Clark and Belva Clark, in said residence; and

5. That this act occurred on or about the 27th day of December, 1981, in Wyandotte County, Kansas." (Emphasis added.)

It would appear obvious from the information and the evidence at the preliminary hearing that the specific felony should have

been aggravated robbery. The instruction was not objected to by the defendant. In *State v. Stafford,* 223 Kan. 62, Syl. ¶ 2, 573 P.2d 970 (1977), we held:

"When an instruction has not been objected to at trial, this court's scope of review is limited to a determination of whether the instruction is 'clearly erroneous.' An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict."

In view of the overwhelming evidence in this case we cannot say that there was any real possibility that the outcome of the trial would have been any different if the instruction had properly identified the intended felony.

Next appellant contends it was error to convict him of two kidnappings when he was only involved in the restraining and tying up of Mr. Clark. He apparently contends that as it was his partner in crime who tied up Mrs. Clark he should not be held responsible for that particular kidnapping. It is well settled that all participants in a crime are equally guilty without regard to the extent of their participation, and that any person who counsels, aids, or abets in the commission of an offense may be charged, tried and convicted in the same manner as though he were a principal. *State v. Payton,* 229 Kan. 106, 622 P.2d 651 (1981). The argument lacks merit.

Appellant also contends that the movement and confinement of the Clarks was merely ancillary to the aggravated robberies rather than independent crimes of kidnapping. K.S.A. 21-3420 provides:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
(*a*) For ransom, or as a shield or hostage; or
(*b*) *To facilitate flight or the commission of any crime;* or
(*c*) To inflict bodily injury or to terrorize the victim or another; or
(*d*) To interfere with the performance of any governmental or political function. Kidnapping is a class B felony." (Emphasis added.)

We have previously construed this statute as requiring no particular distance of removal, nor any particular time or place of confinement. *State v. Buggs,* 219 Kan. 203, 216, 547 P.2d 720 (1976). In *Buggs,* we held:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(*a*) Must not be·slight, inconsequential and merely incidental to the other crime;

(*b*) Must not be of the kind inherent in the nature of the other crime; and

(*c*) *Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."*

It appears obvious that the Clarks were tied to their bed for the specific purposes of making commission of the robberies easier and facilitating the flight of the defendant. The point lacks merit.

Lastly, appellant claims that his physical lineup before the Clarks the day after the robberies was impermissibly suggestive in that the lineup only contained four individuals and should have contained at least six. The same argument was found to be without merit in *State v. Estes*, 216 Kan. 382, 532 P.2d 1283 (1975). Appellant contends that having less than six individuals in a lineup is a violation of the fundamental fairness doctrine under the Fourteenth Amendment and asks that we overrule *Estes*. We find no such violation and decline to overrule our holding in *Estes*.

The judgment is affirmed.