STATE of South Dakota, Plaintiff
and Appellee,

v.

David P. HANSEN, Defendant
and Appellant.

No. 15387.

Supreme Court of South Dakota.

Considered on Briefs Feb. 19, 1987.

Decided June 3, 1987.

Thomas Harmon, Asst. Atty. Gen. (Mark V. Meierhenry, Atty. Gen., on the brief), Pierre, for plaintiff and appellee.

Gary D. Blue of Blue's Law Office, Freeman, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Defendant-Appellant David Hansen (Hansen) was charged by Information of (1) Third-Degree Burglary; and (2) Intentional Damage to Private Property. Subsequently, he was charged by Indictment of Aiding and Abetting or Advising Another to Commit Third-Degree Arson. A jury found him guilty of all three crimes. Hansen appeals contending the circuit court committed reversible error when it

(1) refused his proposed instructions regarding the crime of Third-Degree Burglary;

(2) denied certain challenges of jurors for cause; and

(3) denied his Motion for A Change of Venue.

We affirm.

## FACTS

During the evening of August 9, 1985, Hansen and J.K. (a minor) traveled to Marion, South Dakota, in J.K.'s father's truck. After arriving in Marion, Hansen disembarked at Main Street and the two adolescents went their separate ways. At approximately eleven o'clock p.m., J.K. located and picked up Hansen in downtown Marion. Shortly before midnight, Hansen and J.K. entered the unlocked Salem Mennonite Church. The Church was severely vandalized; books and other objects were tossed about; unauthorized long-distance telephone-sex calls were made; objects and furniture were broken and defaced; evidence reflects Hansen wrote satanistic and demonological expressions on Church walls. A sound mixer, a portable cassette player, and some cassette tapes were removed from the Church.[1]

Upon exiting Salem Church, J.K. and Hansen journeyed to Hansen's home, arriving at approximately two o'clock a.m. They listened to music and worked on Hansen's motorcycle, which J.K. was interested in purchasing. Thereafter, Hansen gave J.K. two one-gallon jugs filled with gasoline. J.K. drove back to Salem Church and started two fires which resulted in almost total destruction of the Church.[2]

Action was commenced by Complaint, dated August 15, 1985, stating two counts: (1) Third-Degree Burglary; and (2) Intentional Damage to Private Property. On August 22, 1985, a Preliminary Hearing was held and Hansen was bound over to the circuit court. An Information mirroring the Complaint was filed against Hansen on September 3, 1985. On November 4, 1985, Hansen was charged by Indictment of Aiding and Abetting or Advising Another to Commit Third-Degree Arson.

A jury trial was held from March 3–7, 1986. Hansen was found guilty of (1) Aiding and Abetting Arson, (2) Burglary in the Third Degree, and (3) Intentional Damage to Private Property. He was sentenced to serve the following terms in the State Penitentiary: (1) two years for third-degree burglary; (2) two years for first-degree intentional damage to property; and (3) ten years for aiding and abetting or advising another to commit arson. (1) and (2) above were to be served concurrently, following Hansen's completion of the ten-year arson sentence. Hansen appeals.

---

1. Note that J.K.'s and Hansen's stories conflict. Hansen claims J.K. (1) suggested visiting Salem Church; (2) did most of the damage; (3) dialed telephone-sex numbers from memory; and (4) removed the electronic equipment and tapes. J.K.'s story is completely opposite on every point.

2. Again, stories of Hansen and J.K. greatly differ. Hansen states J.K. was given gasoline as payment for transportation to and from Marion. Hansen also testified that he had no idea that J.K. was planning to set Salem Church ablaze. J.K. claims that Hansen suggested to J.K. that he, J.K. set fire to Salem Church to prevent discovery of fingerprint evidence. J.K. testified that Hansen supplied gasoline for the express purpose of starting the fire.

## DECISION

### I.

Hansen contends that Count I of the Information, charging him with Third-Degree Burglary,[3] only identified Theft as the underlying crime. He advocates he was surprised to his detriment as Jury Instruction Number 9,[4] in addition to naming theft as an underlying crime, identified "intentional damage to property" as an underlying crime. Hansen concludes that reversal of his conviction is mandated. We disagree.

■ In *State v. Wilson*, 297 N.W.2d 477, 481 (S.D.1980), we noted: "Generally, an information charging burglary is defective in form unless it specifies the ulterior crime intended in making the unauthorized entry." (Numerous citations omitted.) However, " '[s]uch a defect does not ... automatically result in prejudicial error.' " *Id.* (quoting *State v. Lora*, 213 Kan. 184, 188, 515 P.2d 1086, 1090 (1973)). *See State v. Maxwell*, 234 Kan. 393, 672 P.2d 590, 594–95 (1983). *See also State v. Motta*, 66 Hawaii 89, 93, 657 P.2d 1019, 1021–22 (1983). If the underlying crime is made clear at a preliminary hearing, or by context of other charges in the information, failure to delineate specific intended crimes does not rise to the level of reversible error. *Wilson*, 297 N.W.2d at 481; *Lora*, 234 Kan. at 189, 515 P.2d at 1091. "Such failure cannot result in surprise or be considered prejudicial to the defendant's substantial rights at ... trial when the intended felony was made clear in advance of the trial." *Lora*, 234 Kan. at 189, 515 P.2d at 1091. *See Wilson*, 297 N.W.2d at 481.

■ In the present case, Hansen was charged in Count II of the Complaint with "Intentional Damage to Private Property." Count II of both the Original and Amended Informations charged him with "Intentional Damage to Private Property." At the Preliminary Hearing, Hansen was again informed that he was charged with "committing the crime of intentional damage to private property in the first degree." It is clear to us that the Information should have included Intentional Damage to Private Property as an underlying crime to the charged Burglary. However, Hansen knew of the Intentional Damage to Private Property charge prior to trial and he cannot seriously claim prejudice by its inclusion as an underlying crime to the burglary charge. *See Wilson*, 297 N.W.2d at 481; *Lora*, 234 Kan. at 189, 515 P.2d at 1091. " 'Whether error is prejudicial must be determined on the basis of the facts in any given case.' " *State v. Remacle*, 386 N.W.2d 38, 40 (S.D.1986) (quoting *State v. Waller*, 338 N.W.2d 288, 291 (S.D.1983)). Prejudicial error is that which, in all probability, has produced some effect upon the final result and to have affected the rights of the party assigning that error. *See* SDCL 23A–44–14. We conclude no such error exists here.

### II.

Hansen next asserts that reversible error was committed when the circuit court denied his challenge of two jurors for cause.[5]

---

**3.** Count I states:

That on or about the 10th day of August, 1985, at RR, Freeman, in the County of Turner, State of South Dakota, David Hansen, did commit the public offense of Third Degree Burglary (SDCL 22–32–8) in that David Hansen did enter or remain in an unoccupied structure, to-wit: The Salem Mennonite Church, with intent to commit a crime therein, to-wit: theft, thereby committing the crime of Third Degree Burglary; in violation of SDCL 22–32–8 (Class IV Felony)

**4.** Jury Instruction Number 9 provides:

The essential elements of the crime of Burglary in the Third Degree as charged in Count I in the Information, each of which the State must prove beyond a reasonable doubt, are:

1. That the defendant at the time and place alleged in the Information entered or remained in a structure described as the Salem Mennonite Church located in Turner County, South Dakota.
2. That said structure was an unoccupied structure.
3. That the defendant entered therein with the intent to commit a crime therein, namely, theft and intentional damage to property in the first degree.

**5.** Voir dire was exhaustive herein, consisting of 332 pages of transcripts as compared to 480 pages of trial transcript. Great latitude was given to defense counsel in his questioning. Juror Parsons had a casual opinion of guilt, based on hearsay, but understood the presumption of

Hansen points out both jurors revealed, through their answers to questions asked of them during voir dire, namely, both had prior opinions as to his guilt. He urges we reverse the circuit court on grounds that he was denied a fair trial. We find no reversible error was committed.

■ Both the federal and our state constitutions guarantee trial by an impartial jury. U.S. Const. amend. VI; S.D. Const. art. VI, § 7; SDCL 23A–16–3. *See State v. Muetze,* 368 N.W.2d 575, 585 (S.D.1985); *State v. Volk,* 331 N.W.2d 67, 70 (S.D. 1983). However, a clear-cut test for determining juror impartiality does not exist. *Muetze,* 368 N.W.2d at 585. *See State v. McLain,* 301 N.W.2d 616, 620 (N.D.1981). But, in any event, "mere expression of a predetermined opinion as to guilt during voir dire does not disqualify a juror per se." *Muetze,* 368 N.W.2d at 585 (citing *Hammill v. State,* 89 Wis.2d 404, 278 N.W.2d 821 (1979); *Beavers v. State,* 63 Wis.2d 597, 217 N.W.2d 307 (1974)). A potential juror should be excused for cause if that juror is unable to "set aside preconceptions and render an impartial verdict." *Muetze,* 368 N.W.2d at 585 (numerous citations omitted). *See* 2 W. LaFave & J. Israel, *Criminal Procedure,* § 21.3(c) (1984). Furthermore, determination of a juror's qualifications must be based upon "the whole voir dire examination" and "[s]ingle isolated responses are not determinative." *State v. Flack,* 77 S.D. 176, 180, 89 N.W.2d 30, 32 (1958). Lastly, we emphasize that a trial judge is vested with broad discretion in determining juror qualifications. *See id.*

■ Our review of the voir dire examinations of both jurors indicates they understood (1) State had to prove guilt beyond a reasonable doubt; (2) a defendant is presumed innocent until proven guilty; and (3) a determination of guilt must be based only upon evidence and testimony introduced

during trial. Although these challenged jurors possessed prior opinions as to Hansen's guilt, it appears they were able to "set aside preconceptions and render an impartial verdict" in satisfaction with our teachings in *Muetze,* 368 N.W.2d at 585. Hansen's juror challenge claim therefore fails.

## III.

Hansen finally advocates his Motion for Change of Venue was improperly denied. Specifically, Hansen makes reference to a questionnaire submitted to sixty prospective jurors. Results of this survey indicated approximately one-third of those answering harbored an opinion that Hansen might be guilty. Our attention is also drawn to pretrial publicity. Hansen concludes, once again, he was denied a fair trial. We find this argument unpersuasive.

■ It is presumed a defendant can obtain a fair trial in the county where the crime is committed. *State v. Luna,* 378 N.W.2d 229, 236 (S.D.1985) (citing *State v. Brandenburg,* 344 N.W.2d 702 (S.D.1984)). Trial courts are infused with broad discretion in deciding if there should be a change in venue. *Luna,* 378 N.W.2d at 236; *State v. Wilson,* 297 N.W.2d at 483; *State v. Belt,* 79 S.D. 324, 327–28, 111 N.W.2d 588, 589–90 (1961). *See* SDCL 23A–17–5. Absent abuse of discretion, a trial court's ruling will not be disturbed upon appeal. *Luna,* 378 N.W.2d at 236; *Wilson,* 297 N.W.2d at 483; *Belt,* 111 N.W.2d at 590. *See* 22 C.J.S. *Criminal Law* § 210 (1961).

■ We also note that publicity before trial is insufficient, by itself, to mandate a venue change. *Luna,* 378 N.W.2d at 236; *State v. Reed,* 313 N.W.2d 788, 789 (S.D. 1981); *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). "Qualified jurors may have some knowledge of the facts and issues involved without bur-

---

innocence remained throughout the trial. Juror Parsons insisted upon listening to the evidence and basing his decision thereon. Juror Kippes expressed a predetermined opinion of guilt. However, all evidence indicated that he could set aside this predetermination and he agreed Hansen must be presumed innocent. Juror

Kippes was most insistent that the State very definitely had to prove guilt beyond a reasonable doubt. Both witnesses were obviously imbued with predetermined opinions, but both obviously indicated they could set them aside and grant Hansen a fair trial.

dening a defendant's Sixth Amendment right." *Luna*, 378 N.W.2d at 236 (citing *Reed*, 313 N.W.2d at 789; *Murphy*, 421 U.S. at 799–800, 95 S.Ct. at 2036, 44 L.Ed.2d at 594–95). In *Luna*, we identified the test as "whether there is, in fact, prejudice in the minds of the county residents sufficient to raise a *reasonable apprehension* that the accused will not receive a fair and impartial trial." *Id.*, 378 N.W.2d at 236 (emphasis added). *See* SDCL 23A–17–5. A change in venue should not be granted "on mere suggestion" that an accused will not receive a fair and impartial trial. 22 C.J.S. *Criminal Law* § 210 (1961).

 In this case, the record reflects careful consideration given to the venue question. The circuit court devoted extensive time to individual voir dire examinations of jurors and allowed Hansen wide latitude in conducting his examinations. *See State v. Bad Heart Bull*, 257 N.W.2d 715, 723 (S.D.1977), *appeal dismissed*, 434 U.S. 1004, 98 S.Ct. 708, 54 L.Ed.2d 747 (1978). Pretrial publicity was a problem, but this circuit court judge carefully protected Hansen's right to a fair trial. We cannot say the circuit court abused its discretion when it denied Hansen's motion for change of venue.

Affirmed in all respects.

WUEST, C.J., MORGAN and SABERS, JJ., concur.

MILLER, J., concurs specially and concurs in result.

MILLER, Justice (concurring specially and concurring in result).

I specifically concur in the majority's holding on the first issue. The practical effect of instructions was to add an additional element of proof burdening the state, namely, the commission of intentional damage to property. If any prejudice flowed from the addition, it was to the State.

I cannot concur on Issues II and III. The change of venue motion should have been granted. Alternatively, the two jurors (Issue II) should have been excused. I cannot agree with the majority holding that no error occurred. I perhaps could be per-

suaded that the trial court's errors were harmless (SDCL 23A–44–14; *State v. Moves Camp*, 376 N.W.2d 567 (S.D.1985); *State v. Muetze*, 368 N.W.2d 575 (S.D. 1985)), but I will not concede that the holdings were error free.