No. 79,891

STATE OF KANSAS, *Appellee*, v. CORNELIUS JOHNSON, *Appellant*.
(970 P.2d 990)

Opinion filed December 11, 1998.

*Geary N. Gorup,* of Render Kamas, L.C., of Wichita, argued the cause and was on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is Cornelius "Neal" Johnson's direct appeal from convictions of aggravated robbery, K.S.A. 21-3427, aggravated burglary, K.S.A. 21-3716, first-degree (felony) murder, K.S.A. 21-3401(b), and subsequent sentences of life in prison, consecutive to a term of 95 months for the aggravated robbery conviction, and consecutive to the term of 34 months for the aggravated burglary conviction.

Johnson and his codefendant Geno Mullins were charged and tried together as the result of the robbery and shooting death of a Wichita marijuana dealer, Craig Marcy.

Johnson's appeal raises common issues with those of Mullins which we will consider herein. The first issue of whether under the facts of this case there was sufficient evidence from which a jury could convict Johnson and Mullins of aggravated burglary will entitle both parties to relief. The separate issue raised by Johnson concerning admission and usage of a letter written by Johnson to the State's primary witness does not entitle him to additional relief.

*Facts and testimony*

In December 1993, Craig Marcy was killed by a gunshot wound while he was selling marijuana at a residence he was using in Wichita. The investigation of Marcy's death was hampered by misinformation from the owners of the house at 1626 North Estelle, Jessie Coleman and Arthetta Pappas. During the investigation of the property where the victim was killed, the police noted the living room had been recently mopped and cleaned, but one bullet was located and recovered which appeared to be from a 9mm gun. Testimony showed the slug found in the house could not have been fired by the same weapon which fired the fatal shot that killed Marcy.

The homicide investigation revealed only hearsay matters until April 1994 when a federal prisoner, Bethany Stratford, who had committed three armed robberies, agreed to provide information

in hopes of obtaining a reduction for her federal sentences. Stratford told the following story which is the primary basis for the arrest and conviction of Johnson and Mullins.

Stratford, her cousin Jason Seymour, a friend named Jill Frye, and Johnson drove from Derby, Kansas, to the "weed" or "bud" house in Wichita to purchase marijuana. Stratford provided the money for the drugs and was driving her grandmother's blue van at the time. Johnson went inside to make the buy and emerged a couple of minutes later with a bag of marijuana. Upon reentering the van, Johnson said it would be a good time to "jack" (rob) the drug house. Johnson told Stratford to go get Mullins to help with the job.

Stratford knew Mullins and had been to his house numerous times. According to Stratford, they drove to Mullins' nearby residence and Johnson went into the house and shortly returned with Mullins. On the way to the drug house, Johnson and Mullins discussed whether they would rob the drug house if other customers were present. They parked close to the house and Johnson and Mullins walked up to the house while Stratford, Frye, and Seymour waited in the van. According to Stratford, both men were armed with 9mm handguns.

Johnson came back to the van alone, opened the side door and threw two guns inside: a .32 caliber pistol and a Mac 11. As Johnson stashed the guns he said that Mullins was "in there getting his ass whooped" and he (Johnson) had "popped the dude in the ass." Johnson started back to the house to help Mullins when Stratford heard three or four gunshots.

Before Johnson reached the house, Mullins emerged. Stratford said that both Johnson and Mullins were "real excited." Stratford testified further that Johnson was talking about how he shot Marcy in the leg; Mullins said, "Did you see that he had the .32 in his crotch?" Johnson said, "Yeah." Mullins said that after Johnson had "popped him, I thought he was going to pop [Johnson]" and that's when Mullins reached down and grabbed the .32 from between Marcy's legs. Mullins said that after Johnson left the house, Marcy tried to take his gun and that he shoved Marcy back and "just dumped on him" (shot him) somewhere in the chest area. Then

Mullins ran out the door. Neither Johnson nor Mullins had blood on them but Stratford noticed a "little scratch" where Marcy may have hit him. Stratford thought that Johnson and Mullins obtained some marijuana and money in addition to the guns from the robbery.

The party drove Mullins to his house; they then returned to Derby where they smoked some marijuana and later learned that Marcy had died as a result of the incident.

Seymour testified that he knew that Johnson and Mullins intended to rob the drug house. Seymour said that Johnson and Mullins entered the house and after a few minutes Johnson returned alone carrying marijuana. He testified that Johnson said nothing at this point. Seymour said Johnson returned to the house and later returned to the van with Mullins. Seymour testified that Johnson and Mullins told the van occupants "that they had got into a scuffle with [Marcy] and [Marcy] had been shot. . . . I couldn't tell you who said what, but he had been shot in the stomach or chest and once in the leg or in the rear." Seymour said he heard no shots while the van was parked in front of the drug house. Seymour further testified he had been promised that he would not be prosecuted in connection with the drug house robbery and he admitted that he had lied to the police earlier when he said he was asleep in the van and woke up to find Mullins there with them.

Johnson took the stand and testified that he had no knowledge of the case before coming to trial. He said he knew Stratford through his girlfriend, Frye, and that he and Stratford had had a falling out. Johnson said he had loaned out the gun that was said to have been used in the robbery and denied robbing the drug house or being involved in the shooting of Marcy. Hazel Simon testified that Mullins lived at her house during December 1993, and that Mullins had left the house during the day, but spent each night at her home.

Dr. Corrie May performed the autopsy and testified that the bullet from Marcy's body and the bullet in the wall did not come from the same gun. The firearms expert Gary L. Miller testified that the bullet found in the wall was fired from Johnson's 9mm

pistol and the fragments recovered from Marcy's body were fired from a 9mm pistol but not from Johnson's pistol.

The other occupant of the van, Jill Frye, did not testify.

Several people in the neighborhood testified to activity at the time of the death of Marcy but did not provide positive identification of either Johnson or Mullins. Coleman testified that he saw blood in the house which was cleaned up by his wife. He admitted lying to the police during initial investigation because of the illegal activity being carried on at his property. He testified that he did not give Johnson and Mullins permission to enter his residence.

In attempts to bolster Stratford's testimony several writings were offered and admitted into evidence. The facts concerning the writings will be covered in more detail when considering the issues raised.

The jury returned guilty verdicts on all counts against both Mullins and Johnson.

## Analysis

*Was there sufficient evidence from which a jury could convict Johnson of aggravated burglary?*

Johnson argues there was not sufficient evidence from which a jury could have convicted him of aggravated burglary.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' *State v. Knighten,* 260 Kan. 47, Syl. ¶ 1, 917 P.2d 1324 (1996)." *State v. Claiborne,* 262 Kan. 416, 425, 940 P.2d 27 (1997).

The elements of aggravated burglary are set forth in K.S.A. 21-3716, which in applicable part states:

"Aggravated burglary is knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit a felony, theft or sexual battery therein."

The jury was instructed as to both Johnson and Mullins that to establish the charge of aggravated burglary each of the following claims must be proved:

"1. That the defendant knowingly entered into or remained in a residence; 1626 N. Estelle;

"2. That the defendant did so without authority;

"3. That the defendant did so with the intent to commit a robbery therein;

"4. That at the time there was a human being in the residence; and

"5. That this act occurred on or about the 27th day of December, 1993, in Sedgwick County, Kansas."

At the close of the State's evidence, both Johnson and Mullins moved for judgments of acquittal on the aggravated burglary charge, asserting that the State had offered no evidence that either had entered or remained within the house without authority. In denying this motion, the trial judge stated:

"In regards to the burglary case, we had testimony from Jessie Coleman that he did not give authority nor permission for the defendants to enter or remain, which is also one of the fundamental principles of burglary. I believe that the State has shown a prima facie case."

Although Johnson denied involvement in any of the crimes and Mullins did not testify, it is undisputed that the two suspects entered the residence used for the sale of marijuana by simply walking in the front door. While Coleman testified that he did not give anyone permission to enter his residence to rob and shoot Marcy, it is clear that Coleman sublet the house to Marcy for the sale of drugs, was paid for the use of the house, stayed away in an attempt to prevent involvement in a criminal activity, and had no right to control the coming and going of individuals to his property while it was occupied by Marcy. The right of control of the property was vested in Marcy and his partners who openly invited individuals desiring to purchase illegal drugs to walk into the premises without restraint or limitation.

We first hold that the statement of Coleman that he did not authorize the entry for criminal purposes does not establish that the entry was "without authority." This testimony is insufficient to establish a necessary element of the crime.

Johnson argues that if unfettered and uncontrolled entry is allowed into a building where drugs are sold, the necessary element of the crime of aggravated burglary that the entry must be "without authority" cannot be established under the specific evidence and

facts of this case. He points to the testimony of the State's own witnesses, Stratford and Seymour, that the entry required nothing more than the opening of a door and stepping inside the "bud house."

Johnson contends the rule the State wishes us to adopt would allow a coconspirator in a drug selling operation (the co-owner of the residence) to testify after the fact that while he may have allowed some felonies to be committed in his residence, others were not authorized. Therefore, the entry to rob and commit felony murder becomes "without authority" which satisfies the necessary element for an aggravated burglary conviction.

Johnson points out that in *State v. Harper*, 246 Kan. 14, 21, 785 P.2d 1341 (1990), we specifically rejected the "California rule" of *People v. Nunley*, 168 Cal. App. 3d 225, 214 Cal. Rptr. 82 (1985), that a defendant's criminal intent upon entry may render the entry "unlawful" under the burglary statute. Our reasoning was that while the Kansas Legislature could have omitted the element that the entry must occur "without authority" and thereby making all entries to commit a crime burglary, it did not do so. We held that we must give meaning to all of the provisions of the statute.

We will discuss *Harper* in more detail later in this opinion, but it also sets forth our specific holding that "[t]he Kansas Legislature clearly intended for the element of intent to commit a felony or theft to be separate and distinct from that of entry without authority." 246 Kan. at 24.

The State asks us to find the element of entry "without authority" is satisfied by the evidence of a struggle, showing authority to enter was withdrawn. Under this logic, an entry for one felony (sale of drugs) was authorized, but the authority is withdrawn once the robbery commences. The State cites for support *State v. Bell*, 224 Kan. 105, 107, 577 P.2d 1186 (1978) (holding there was sufficient evidence to support an aggravated burglary conviction when the State did not produce a witness to directly testify as to whether the defendant had authority to enter the premises because the defendant had shot and killed the residents of the premises).

The State further contends that the facts in *State v. Maxwell*, 234 Kan. 393, 672 P.2d 590 (1983), are closely analogous to the

facts of the instant case. In *Maxwell*, the defendants gained entry into an antique dealer victim's home on the pretense that they were interested in selling him an antique watch. After the defendants entered the home, they proceeded to rob the victim and his wife. The defendants were charged and convicted of aggravated burglary. On appeal, Maxwell argued there was insufficient evidence to support the aggravated burglary conviction because the victim voluntarily allowed him into the home, thus, consenting to the defendant's entry. This court held:

"[W]here the consent to enter . . . is obtained by fraud, deceit or pretense the entry is not an authorized entry under the statute in that it is based on an erroneous or mistaken consent. Any such entry is unauthorized, and when accompanied by the requisite intent is sufficient to support a burglary or aggravated burglary conviction." *Maxwell*, 234 Kan. at 397.

In the instant case, both Stratford and Seymour testified that Johnson and Mullins planned on gaining entry to the premises on the pretense that they were unhappy with the previous marijuana purchase. Thus, the State says the entry was gained by a ruse making the entry unauthorized because it was obtained by deceit.

In beginning our analysis we specifically point out that the "bud or weed" house in issue here was not a public building, nor was it a private residence during the time it was being utilized for the illegal activity.

While the common-law and sometimes statutory necessity of having a "breaking" is not an issue here, the existence or nonexistence of consent to the entry brings into focus our central issue of whether the entry was made "without authority." In discussing whether valid consent to an entry exists so that the essential element of an unauthorized entry may exist, the following is stated:

"The making of an opening qualifies as a break only if it is trespassory. It is not trespassory if the owner or occupant of the dwelling house consents thereto.

"If a servant who has been given a key to enter the dwelling house at any time enters for the purpose of committing larceny, there is no burglary . . . .

"Permission to enter is legally significant only if given by the owner or occupant, or by a person with authority to do so." 3 Wharton's Criminal Law § 319 (15th ed. 1995).

In discussing what constitute a constructive break, Wharton goes on to state:

"There is a constructive break when an opening is made as a result of the defendant's artifice or fraud, duress or conspiracy. Accordingly, there is a constructive break when the defendant causes the occupant to open the door under the pretense of doing business with him or of paying him a social visit . . . ." 3 Wharton's Criminal Law § 320 (15th ed. 1995).

These statements echo the holdings of two recent Kansas cases, *Harper*, which is relied upon by Johnson and *Maxwell*, which is championed by the State. Both are factually different from our case and neither provides any ultimate binding authority.

Our most recent case, *Harper*, simply held that the question of whether a defendant has authority to enter the premises is to be resolved without reference to his intent at the time of the entry. We further held that where Harper, an employee, was given a key to the premises and permission to use the premises after hours for both work-related and personal business, entry into the premises at 2 a.m. for the purpose of taking the employer's files was not an unauthorized entry. 246 Kan. 14, Syl. ¶ 1.

In *Harper*, speaking for an unanimous court, Justice Allegrucci stated that authority to enter a building is not negated when the entry occurs for an unlawful purpose, rejected the per se "California rule" as we have previously stated, and set forth our holding in the following manner:

"The authority to enter here must be interpreted as one that was general and not limited to specific employment purposes. The entry by the defendant was authorized and did not become unauthorized because of his criminal intent. Because the authority to enter was virtually unlimited, this evidence would cause a reasonable mind to conclude that a reasonable doubt existed that defendant entered the clubhouse at Dukes' Diamonds without authority." 246 Kan. at 25.

While the reasoning and intent of *Harper* is persuasive, the factual basis for the entry and the authority upon which it was established is entirely different from our situation.

We likewise do not find *Maxwell* persuasive to compel affirmance of the aggravated burglary conviction as the State suggests. The entry there was obtained by two men who entered into the residence of an antique dealer to ostensibly talk about a watch.

Upon entry being obtained by this ruse, the two men threatened the antique dealer and his wife, told them it was a holdup, tied them up, and ransacked the house, stealing money, jewelry, and other personal property.

In response to the claims that insufficient evidence existed to support an aggravated burglary conviction under K.S.A. 21-3716 in *Maxwell* because the initial entry was consensual, we relied on *State v. Ortiz*, 92 N.M. 166, 584 P.2d 1306 (Ct. App. 1978), *cert. denied* 92 N.M. 79 (1978), and a statement from 13 Am. Jur. 2d, Burglary § 13, p. 328, that "constructive breaking within the law of burglary occurs where the entry is accomplished by means of fraud or threats." We held:

> "Where the consent to enter any of the structures or vehicles listed in K.S.A. 21-3715 and 21-3716 is obtained by fraud, deceit or pretense, the entry is not an authorized entry under the statute in that it is based on an erroneous or mistaken consent. Any such entry is unauthorized, and when accompanied by the requisite intent is sufficient to support a burglary or aggravated burglary conviction." 234 Kan. 393, Syl. ¶ 2.

The *Maxwell* rule is a valid statement of the law throughout the country as to entries obtained by fraud, deceit, or pretense, but it is not applicable to our facts where the entry was made without any restriction or limitation. The fact that a story had been concocted to be used if entry was questioned does not provide fraud, deceit, or pretense where no statement was made and Mullins and Johnson simply walked into the "bud house."

Three Court of Appeals' decisions involved similar issues. In *State v. Reed*, 8 Kan. App. 2d 615, 616, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983), the principal issue related to the point of time in which a victim was present in order to satisfy the aggravated burglary element of "in which there is a human being." The *Reed* opinion looked to *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1973), and *State v. Brown*, 6 Kan. App. 2d 556, 630 P.2d 731 (1981), in stating the "entering into" or "remaining within" language found in both the burglary and aggravated burglary statutes has been held to describe different factual situations concerning the conduct of the burglar. This decision is of no assistance to us.

The aggravated burglary issue in *State v. Mogenson*, 10 Kan. App. 2d 470, 701 P.2d 1339, *rev. denied* 238 Kan. 878 (1985), related to instructions and the questions of the requisite intent. The crime could have been committed by either of two alternative methods of "entering into" and "remaining within." There, the burglar gained the consent of a victim's son to enter, but the victim demanded he leave the house. Because the accused remained after authority had been withdrawn, it was held that: "[t]he unlawful act, remaining without authority, concurs with the criminal intent to commit aggravated battery and so satisfies the statute's elements." 10 Kan. App. 2d at 475.

We again state that the home where illegal sales of marijuana were being made can in no event be considered a public building, but the best analysis of the precise issue we face is found in *State v. Fondren*, 11 Kan. App. 2d 309, 721 P.2d 284, *rev. denied* 240 Kan. 805 (1986), where the entry was made into a school and a purse was taken from a closet in an annex building occupied by students. In addition, the defendant was confronted in the classroom by a teacher at the school.

Fondren argued that the element of an "unauthorized entry" was not satisfied because entering a public building during its regular hours cannot be unauthorized or in the context of our case "without authority." This argument was not deemed persuasive because the State presented evidence from the school's principal that Fondren had no authority, business, or reason to enter the school, either express or implied.

The Court of Appeals' opinion pointed out that an entry is impliedly authorized only to the extent it is consistent with the purpose of business transacted in the building. It was further recognized that our burglary statute makes no distinction between private and public buildings, but there is no absolute right of every citizen to use public buildings. The *Fondren* opinion concluded with the following statement:

"In sum, there is ample evidence to establish the element of an entry without authority and support the aggravated burglary conviction. We would caution that the key to this case is the defendant's knowingly *entering* the school *without*

*express or implied authority,* with intent to commit a theft." 11 Kan. App. 2d at 316.

Any attempt to pull a common thread out of these cases is illusory. The decision in *Harper* follows the language of § 319 of Wharton (entry by an authorized employee is not "without authority"). The result we reached in *Maxwell* is justified by the text of § 320 of Wharton (consent to entry obtained by fraud, deceit, or pretense is "without authority"). Neither *Reed* nor *Mogenson* is helpful and we should not apply the result from a case involving entry into a school (*Fondren*) to a case like ours where two drug purchasers decided to become robbers and walked back into the place of illegal activity. It would not have been an aggravated burglary had the intent upon the second entry been to purchase additional drugs. We are hard pressed to find any logical way to make the entrance by Johnson and Mullins to be "without authority."

There are legions of cases throughout the United States on this general issue, but we have been unable to find any precisely on point. Statutes from Illinois and Arkansas are most like Kansas as to the element of entry being "without authority" but cases from neither jurisdiction are definitive. Also see Annot., 58 A.L.R.4th 335 and Annot., 17 A.L.R.5th 125. Many of the cases cited therein are interesting, but none definitive to our decision.

We are not prepared to adopt the argument that the consent to enter is withdrawn once the robbery commences. Nor do we change our rule stated in *Harper* that a burglary does not arise out of every entry where a crime is later committed.

The element of intent to commit a felony or theft is separate and distinct from that of entry without authority. Under the specific and limited facts of this case, we hold the required element of the crime of aggravated burglary that the entry be without authority is not substantiated and the conviction of aggravated burglary is reversed. We further vacate the consecutive sentence of 34 months which must follow the reversal of the aggravated burglary conviction.

*Did the trial court err in permitting introduction of and usage of a letter from Johnson to Stratford; was its probative value out-*

*weighed by the prejudicial effects; and were the usages made of the letter beyond its limited admissibility?*

The admission or exclusion of evidence is within the sound discretion of the trial court, subject to exclusionary rules. *State v. Friberg*, 252 Kan. 141, 147, 843 P.2d 218 (1992). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person could take the view adopted by the trial court. *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998). An additional rule applicable in this case provides that where an evidentiary issue is raised in a motion in limine prior to trial, a party must make a contemporaneous objection during trial to preserve the issue for review. *State v. Peckham*, 255 Kan. 310, 327, 875 P.2d 257 (1994). Review of the admission or exclusion of evidence is governed by K.S.A. 60-261, the harmless error rule, which provides that no error in either the admission or the exclusion by the court is a ground for granting a new trial or setting aside a verdict unless refusal to take such action appears to the court inconsistent with substantial justice. *State v. Getz*, 250 Kan. 560, 569, 830 P.2d 5 (1992).

At a pretrial hearing, Johnson and Mullins challenged the admissibility of a letter that Johnson had written to Stratford before she provided information to the police. After taking the matter under advisement and reviewing the letter, which was only a half page, because Stratford had torn up and threw away the other half, the trial court initially ruled that the letter would not be admitted as its prejudicial effect outweighed the probative value. Testimony concerning the letter was elicited during the cross-examination of Stratford who contended "he wrote me and basically wrote me off, cussed me out, told me he was going to do this to me, he was going to do that to me in this letter."

During a hearing and prior to redirect examination of Stratford, Johnson renewed a motion in limine but the State argued that the defense had opened the door to the letter by the cross-examination of Stratford concerning her motives and what the letter had to do with her decision to come forward and testify. The trial court

changed its earlier ruling and found that the defense had raised the specific issue, the probative value of the letter was outweighed by its prejudicial effect, and the letter could be introduced for the limited purpose of bolstering the credibility of the witness. Although Mullins asked that the admissibility of the letter be limited to Johnson because he was not a party to it, the court found that the letter was relevant to both defendants because the credibility of the witness was put in issue.

On appeal, Johnson argues that the prosecution used the letter beyond the limited scope of its admissibility to question Johnson about the threats contained therein and in argument to the jury, contrary to ABA Standards for Criminal Justice Prosecution Function and Defense Function, Standard 3-5.6 (b) (3d ed. 1993), which in effect prohibit prosecutorial action outside the rulings of the court. The State argues that the cross-examination of Johnson was not improper and that the contents of the letter which could be construed as a threat supports Stratford's statements that the relationship between them deteriorated; further, it was relevant to support her motive for testifying.

In addition, the State points out that Johnson concedes that when the letter was offered, neither defendant objected to it on the basis of prejudice; rather, defendants' objection was based on the ground of lack of foundation. Thus, the State contends this issue is not properly before the court. See *State v. Solomon*, 257 Kan. 212, 222, 891 P.2d 407 (1995) (holding a point not raised in the trial cannot be raised for the first time on appeal). Whether an issue is properly preserved for appeal is governed by K.S.A. 60-404, which provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

In *State v. Cooper*, 252 Kan. 340, 845 P.2d 631 (1993), counsel for the defense at trial objected to admission of a knife on relevance grounds, but on appeal argued the jury was prejudiced. We held that "[t]he specific grounds for an objection must be given at trial

to preserve an issue for appeal. K.S.A. 60-404. The court did not have an opportunity to rule on the question of prejudice. The knife was relevant. We find no abuse of discretion in admitting the knife." 252 Kan. at 348-49. See also *State v. Bird*, 238 Kan. 160, 172, 708 P.2d 946 (1985) (point is not properly before the court on appeal when the defendant failed to make timely, specific objections).

In the instant case, defense counsel objected to admission of the letter based on a lack of foundation, while Johnson contends the objection to its admission was because of its highly prejudicial content to him. Under our previous holdings in *Cooper*, and K.S.A. 60-404, this issue is not properly before us. In addition, the usage does not appear to be prejudicial under the record in this case.

It is also worthy to note that in the motion in limine, Mullins' counsel objected to the letter, arguing its prejudicial effect outweighed the probative value; however, neither counsel so objected when the letter was offered at trial. Thus, the actions of the co-defendant in no way can be considered to assist Johnson in his argument.

*Did the State improperly mention the letter during final summation, requiring reversal?*

During final argument, the State made a final reference to the letter, in which the prosecutor stated that "[Stratford will] be looking over her shoulder for the rest of her life." This drew an immediate defense objection on the ground that Stratford never testified to this, which was sustained by the trial court. Johnson asserts that the State's comment severely prejudiced him and requires a new trial to be ordered.

We have previously stated in regard to the prosecution's closing argument:

" '[T]he prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Improper remarks made by the prosecutor in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and to deny the defendant a fair trial.' " *State v. Spresser*, 257 Kan. 664, 669, 896 P.2d 1005 (1995) (quoting *State v. Duke*, 256 Kan. 703, 718, 887 P.2d 110 [1994]).

The State argues that contrary to Johnson's claim, the prosecutor was not making a statement of personal belief because his comment was based on the contents of the letter. Additionally, the State contends that the comment was brief, the objection was sustained by the court, and there was no request by the defense that the jury be admonished to disregard the remark. For these reasons, the State asserts that the error, if any, was harmless.

We have held in *State v. Ruff*, 252 Kan. 625, 633, 847 P.2d 1258 (1993), that reversible error exists where the trial court failed to sustain a defense counsel objection to an improper remark. However, in our case, the objection was made and the court sustained the objection. Our facts are more like those of *State v. Perales*, 220 Kan. 777, 780, 556 P.2d 172 (1976), where we held that the trial court's immediate response cured any possible prejudice to the defendant.

In *State v. Zamora*, 247 Kan. 684, 803 P.2d 568 (1990), objection to an improper remark was overruled by the trial court and we held this was reversible error. To the contrary, in *State v. Jordan*, 250 Kan. 180, 825 P.2d 157 (1992), where an improper statement was made, objected to, and the objection sustained, we found the statement was improper but that the error was not reversible error.

The arguments concerning this matter are well stated by both the majority and concurring opinions in *Spresser*, 257 Kan. 664, upon which we need not further comment.

We point out that the jury instructions in this case informed the jury that remarks of counsel are not evidence and any statement made that are not supported by evidence should be disregarded.

While we do not find the statement to be altogether proper, it is certainly not "gross and flagrant" to require reversal and a new trial.

The convictions for felony murder and aggravated robbery are affirmed. The conviction for aggravated burglary is reversed, and the sentence resulting therefrom vacated.