NOT DESIGNATED FOR PUBLICATION

No. 127,070

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JOSHUA XAVIER CRAIG,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed May 23, 2025. Reversed and remanded with directions.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellant.

*Kristen B. Patty*, of Wichita, for appellee.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM:  The State files this interlocutory appeal from the denial of its third motion to endorse witnesses, which effectively excluded 10 witnesses from testifying at trial. Upon review, we reverse for abuse of discretion and remand for the district court to apply the appropriate legal standard under K.S.A. 22-3201(g).

1

On the evening of August 15 and into the morning of August 16, 2020, Stephen Perrin was at a local Lansing bar called The Groggery with his friends Josh Harden and Matt Smith. While there, Perrin had an encounter with Benny Bush, a man Perrin's cousin had beat up about 15 years earlier. Bush's friends jumped Perrin at a party about five or six years after that. The two men had not seen each other since. That night at The Groggery, they "had some words." Perrin was a little angry, and Bush was cold and standoffish. Around closing time, Perrin left with Smith in Smith's white Chevrolet pickup. Soon after leaving the bar, as they were driving, Perrin heard "what sounded like a whistling," and he "saw a muzzle flash coming from the car behind" them. Perrin told Smith to pull over, but "at that same time, the back window broke and . . . [Smith] slumped over." Smith had been shot in the head.

On April 7, 2023, the State charged Joshua Xavier Craig with first-degree felony murder of Smith and criminal discharge of a firearm at an occupied motor vehicle. This appeal involves the State's attempt to endorse 10 witnesses for trial—Perrin, Cynthia Anderson, Armando Dangerfield, Damario Brooks, Dameon Lewis, Jaylen Johnson, Lacy Richeson, Khaylina Burnett, E. Jeannie Mowery, and Dr. Alan Martinez.

A probable cause affidavit was filed at the initiation of the case on April 7, 2023, referencing 8 of the 10 witnesses whose endorsement is at issue in this appeal—all but Mowery and Martinez. The complaint listed 24 witnesses. On July 17, 2023, the State filed a motion to endorse 2 other witnesses but did not include the 10 at issue at here. The same day, the State filed subpoenas for 7 of the 10 witnesses at issue in this appeal to testify at the preliminary hearing—all but Mowery, Dr. Martinez, and Burnett. On August 8, 2023, the State filed a second motion to endorse another witness that included none of the 10 at issue here.

A preliminary hearing was held August 11, 2023. Perrin, Anderson, Dangerfield, Brooks, and Johnson testified. Craig was present, and his counsel had the opportunity to cross-examine the witnesses. Richeson was subpoenaed to testify at the preliminary hearing but was not called to testify. Lewis was subpoenaed and transported to the hearing.

The State then called Officer Joshua Swanbeck, who investigated the shooting. During Swanbeck's testimony, he referenced Mowery as the resident of an apartment near the site of the shooting where a bullet had entered. Swanbeck was cross-examined by defense counsel. The State also called Detective Tesh St. John, who also investigated the shooting. During St. John's testimony, he identified the autopsy report made by Dr. Martinez. The report was admitted into evidence without objection by defense counsel.

On the same day as the preliminary hearing, the district court scheduled Craig's jury trial for December 18, 2023. The order setting the case for trial included a deadline for the parties to file a list of witnesses and exhibits four weeks before the trial, which would have been November 20, 2023. Pretrial motions were also due by November 20, 2023. The final pretrial conference was scheduled for the Friday before trial, which would have been December 15, 2023.

On November 20, 2023, the State filed its witness and exhibit list, which referenced 7 of the 10 witnesses at issue in the appeal—all but Dr. Martinez (who was listed on the autopsy report admitted into evidence at the preliminary hearing), Mowery (who was identified by Swanbeck at the preliminary hearing), and Burnett (who was listed in the probable cause affidavit). On December 7, 2023, the State filed its third motion to endorse the 10 additional witnesses, as well as subpoenas for Mowery, Burnett, and Dr. Martinez to testify at trial. That same day, the State also filed a motion for the district court to determine whether a conflict existed for defense counsel, who was at that time representing two of the State's witnesses—Lewis and Richeson—in other matters.

3

Craig did not file a written response to the motion to endorse. But on December 12, 2023, Craig's counsel moved to withdraw based on his representation of Lewis and Richeson.

The district court considered the motions at the pretrial conference on December 15, 2023. Craig's counsel informed the district court that he had a conflict due to his concurrent representation of Lewis and Richeson. The court then stated, "So neither of them are endorsed witnesses. . . . [A]t the present time, they are not going to be testifying 'cause they are not endorsed witnesses."

At that point, the district court took up the State's third motion to endorse witnesses. The district court first expressed its frustration with the late endorsement of witnesses. The district court added that granting the State's motion would require Craig to get new counsel and delay his trial—due to the conflicts defense counsel had with Lewis and Richeson. The court again expressed its frustration, stating, "And the reason that this entire problem exists is the negligence, the carelessness, lack of diligence, however you wanna phrase it, of the County Attorney's Office in endorsing these witnesses." The district court concluded:

> "The Court further feels that the Court needs to get the County Attorney's Office's attention concerning endorsement of witnesses, and the only way to do that is to deny this motion. So the Court is going to at this time deny the State's third motion for endorsement of witnesses."

The State appealed the district court's ruling.

ANALYSIS

I.     *This Court Has Jurisdiction*

*Standard of Review*

"'Whether appellate jurisdiction exists is a question of law over which this court has unlimited review.'" *State v. McCroy*, 313 Kan. 531, 533, 486 P.3d 618 (2021). Our interpretation of a statute is also subject to unlimited review. 313 Kan. at 533-34.

*Discussion*

We must interpret K.S.A. 22-3603 to determine whether it vests us with subject matter jurisdiction over the State's appeal.

K.S.A. 22-3603 provides:

> "When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within 14 days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal."

Our Supreme Court has interpreted the statute and held that it "is intended to permit appellate review of trial court rulings on pretrial motions *which may be determinative of the case*." *State v. Newman*, 235 Kan. 29, 35, 680 P.2d 257 (1984). In other words, "[i]nterlocutory appeals are to be permitted only where the pretrial order suppressing or excluding evidence places the State in a position where its ability to prosecute the case is substantially impaired." 235 Kan. at 35. "[I]n order to determine

whether a trial court order substantially impairs the State's ability to prosecute a case, the evidence available to the State must be assessed to determine just how important the disputed evidence is to the State's ability to make out a prima facie case." *State v. Sales*, 290 Kan. 130, 140, 224 P.3d 546 (2010). And the State can prove substantial impairment of its prosecution where it is seriously impeded but not technically foreclosed. *State v. Myers*, 314 Kan. 360, 366, 499 P.3d 1111 (2021).

The State has made that showing here. It assessed the anticipated testimony of the excluded witnesses and demonstrated the critical nature of that evidence in proving its case against Craig. The State alleged that Perrin's testimony was necessary to illustrate the animosity between himself and Bush, the precursor to the shooting. And Perrin was in the car with Smith when Smith was shot and killed.

Anderson took a video on her phone at The Groggery the night of the shooting, placing Craig with Bush. Dangerfield, who was at The Groggery on the night of the shooting to buy drugs from Bush, saw Craig there. He also saw Craig sitting in the passenger seat of a white Cadillac Escalade driven by Stephen Charlton—the vehicle police saw in a QuikTrip video following Smith's vehicle just before the shooting. Police later found gunpowder residue on the passenger side when police dusted the vehicle. Richeson could identify the Escalade and link it to Charlton.

Dr. Martinez performed the autopsy and would testify to the identification of the victim and the cause of death. Lewis could testify that the firearm used in the shooting was purchased by Craig and, afterward, Craig tried to sell it. Lewis could also testify that Craig confessed to Lewis that he shot the driver of the truck by accident.

In *State v. Martinez-Diaz*, 63 Kan. App. 2d 363, 528 P.3d 1042 (2023), the State brought an interlocutory appeal to challenge the district court's denial of its motion to find Javier Romero unavailable so that his previous testimony or statements could be

6

admitted. Romero was in a car with his girlfriend, Caylee Nehrbass, when their car was fired upon and Nehrbass was shot in the head. Nehrbass survived the shooting. Martinez-Diaz argued that Romero's testimony was superfluous because the State still had Nehrbass' testimony. The *Martinez-Diaz* panel held the exclusion of Romero's testimony substantially impaired the prosecution and explained that Nehrbass' testimony was liable to be impeached and could not replace Romero's testimony. 63 Kan. App. 2d at 371-72. The panel reasoned that "part of [the] burden of persuasion is satisfying jurors' expectations about trial, one of which is 'expectations about what proper proof should be.' Jurors expect a prosecutor to prove certain crimes with certain evidence. [Citation omitted.]" 63 Kan. App. 2d at 372. The panel concluded that if Romero's testimony were not presented, "[j]urors will wonder where he is, why he is not testifying, and what the State might be hiding in his absence." 63 Kan. App. 2d at 372.

Similarly, here, jurors would expect Perrin, whose history with Bush set off the shooting and who was in the truck with the victim at the time of the shooting, to testify. It is also likely that Brooks, Johnson, and Dangerfield would be impeached, as all were involved in other criminal activity. Dangerfield admitted to crushing and snorting a pill that he bought from Bush the night of the shooting. Brooks was a fellow inmate of Craig's when Craig confessed to him. As to Johnson, the probable cause affidavit indicates that he told St. John that Craig told him he killed someone, but, at the preliminary hearing, Johnson denied that Craig ever told him about that, explaining he was "under the influence when [he] was talking." The multiple confessions help corroborate each witness, whose testimony might otherwise be discounted. See also *State v. Armstrong*, No. 124,709, 2023 WL 3910175, at *7 (Kan. App. 2023) (unpublished opinion) (finding State's case would be substantially impaired without evidence).

Without these witnesses, the State would not be able to prove the victim's identity and cause of death, the nature of the dispute that led to the shooting, that Craig owned the gun used in the crime, that Craig was riding in the white Escalade driven by Charlton and

7

involved in the shooting, and that Craig confessed to the killing multiple times to multiple people. Accordingly, we find we have jurisdiction over the State's interlocutory appeal.

II.    *The District Court Abused Its Discretion in Denying the State's Third Motion to Endorse Witnesses*

*Standard of Review*

Appellate courts review the district court's decision of whether to allow the late endorsement of witnesses for an abuse of discretion. *State v. Bloom*, 273 Kan. 291, 311-12, 44 P.3d 305 (2002). Judicial action is abused if the action is arbitrary, fanciful, or unreasonable, or if the action is based on an error of fact or law. *State v. Ross*, 310 Kan. 216, 224-25, 445 P.3d 726 (2019).

*Discussion*

K.S.A. 22-3201(g) provides the prosecuting attorney with instructions for endorsing State's witnesses:

> "Except as otherwise provided, the prosecuting attorney shall endorse the names of all witnesses known to the prosecuting attorney upon the complaint, information and indictment at the time of filing it. Except as otherwise provided, the prosecuting attorney may endorse on it the names of other witnesses that may afterward become known to the prosecuting attorney, at times that the court may by rule or otherwise prescribe. If any witness is to testify and the prosecuting attorney believes the witness who has provided information is in danger of intimidation or retaliation, the prosecuting attorney may delay identifying such informant witness until such informant witness actually testifies but in no event shall identification of a witness be delayed beyond arraignment without further order of the court after hearing and an opportunity of the defendant to be heard."

The Kansas Supreme Court has consistently interpreted this statutory language to allow the State to endorse witnesses at any time unless "it will result in 'actual prejudice in [the defendant's] ability to defend against the charges.'" *State v. Brosseit*, 308 Kan. 743, 749, 423 P.3d 1036 (2018); see *State v. Price*, 55 Kan. 606, 608, 40 P. 1000 (1895). "A defendant can show actual prejudice when the late endorsement comes as a surprise "'and the testimony was critical or, in other words, of 'a climactic and highly damaging nature.'"'" *Brosseit*, 308 Kan. at 749.

In arguing that the district court abused its discretion in denying the late motion to endorse, the State points to several cases, including *State v. Ferguson, Washington & Tucker*, 228 Kan. 522, 526, 618 P.2d 1186 (1980). This case supports the State's argument that a party's late endorsement of a witness may be denied "upon a showing of actual prejudice." *Ferguson* states the test that district court judges should use when ruling on the State's late endorsement of witnesses: "The test to be used in determining whether permission should be granted is whether the defendant's rights will be prejudiced." 228 Kan. at 526.

The State also argues that the district court's ruling was premised on "animus towards the Leavenworth County Attorney's office," which was not an "appropriate exercise of judicial discretion." The State asserts that "[t]he decision to make a ruling based on a personal conflict with the county attorney and not based on the facts in the present record is an arbitrary ruling."

While we understand the district court's frustration, our Supreme Court has repeatedly outlined the appropriate test for ruling on a late endorsement of witnesses. See *State v. Thompson*, 232 Kan. 364, 367, 654 P.2d 453 (1982).

Further, rather than focusing on actual prejudice to the defense, the district court focused on the burden a delay in trial would cause the defendant. In its place, the district

9

court made a passing reference to the "very damaging evidence" that the witnesses would testify to, but the court did not address the lack of surprise. The district court focused on the fact that defense counsel would have a conflict if Lewis testified. The district court did not make the appropriate inquiry and find actual prejudice to the defense. See *Brosseit*, 308 Kan. at 749.

To conclude, the appropriate standard to be applied by the district court was whether the late endorsement caused actual prejudice to the defense, not whether the State acted with bad faith. See 308 Kan. at 749. For that reason, the district court abused its discretion through a mistake of law. See *State v. Atkisson*, 308 Kan. 919, 926, 425 P.3d 334 (2018) ("'[A]n abuse of discretion may be found if the trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards.'").

In light of K.S.A. 22-3201(g), we reverse and remand with directions to the district court to apply the proper standard.

Reversed and remanded with directions.